STATE, EX REL. JEREMIAH B. CLEVELAND v. THE BOARD OF FINANCE AND TAXATION OF JERSEY CITY.

1. There need not be a positive refusal on the part of public officers, or municipal bodies to perform a duty enjoined upon them, to authorize the interposition of the court by *mandamus*. It is sufficient if there is unreasonable delay, and a manifest intention not to perform it.
2. Section second of the "act relative to reservoir number three of the Jersey City Water Works," (1875,) requires the concurrent act of the board of public works and the board of finance and taxation to submit to arbitration what compensation, if any, is due the relator for work on said reservoir.
3. The legislature had the power to arrest the work upon said reservoir, which was being done partly under legal contract, and partly outside of the contract, without previous advertisement for proposals, and say what shall be the equitable terms of settlement on the part of the city, where the contractor assents.
4. It is in the power of the legislature to dispense with formalities contained in the charter, and give contractors their equitable right to compensation for services rendered, or materials furnished in good faith for the public benefit.
5. The question of compensation may be submitted to any impartial tribunal the legislature may designate, and the city cannot complain that the right of trial by jury has been violated.
6. A peremptory *mandamus* will be issued after a full hearing on a rule to show cause, to require the board of finance and taxation to agree on the appointment of arbitrators to determine such compensation.

On motion for *mandamus*.

March 2d, 1871, a contract was made between the water commissioners of Jersey City, of the one part, and John W. Mitchell and David B. Bridgeford, of the other part, for building reservoir number three, according to specifications, drawings, &c. After the work was begun, the contract was assigned, January 10th, 1872, by Mitchell and Bridgeford to Jeremiah B. Cleveland, who was to perform the contract, and received all moneys due and to grow due thereon.

By act of the legislature of New Jersey, entitled "an act to re-organize the local government of Jersey City," approved

March 31st, 1871, the board of public works was substituted for the water commissioners, in control of all structures and property connected with the supply and distribution of water, &c.

By resolution of the board of public works, dated January 30th, 1872, the assent of the board was given to the above assignment of contract by Mitchell and Bridgeford to Jeremiah B. Cleveland.

The work was continued by Cleveland under the contract, and payments were made thereon, but the plans for building the reservoir were altered by a resolution of the board of public works. There was no advertisement for proposals for doing the work under the substituted plans. March 24th, 1875, an act of the legislature, entitled "an act relative to reservoir number three of the Jersey City Water Works," was passed. This act recited the above contract, the assignment, proceedings, change of plans, &c.; provided, that the work should be stopped, specifications prepared and advertised for competition. The second section enacted, " that the board, or authority aforesaid, shall, if said Cleveland desires it, submit the question—what compensation, if any, is equitably due to said Cleveland for what has been done or furnished by him or his assignors, either under the contract before stated with his assignors, or for work done or materials furnished for said reservoir, or the sewer therewith connected, outside of that contract, not, however, charging said Cleveland with any overpayment to Mitchell and Bridgeford for work done by them, if any such overpayment there was, to the award and determination of such person or persons as said Cleveland and the board of finance and taxation of Jersey City shall agree upon; and the amount of said award, if in favor of said Cleveland, shall be paid to him by the board, or authority having control and charge of said reservoir, in full of all claims and demands against said board, or said city, or any department thereof, and upon his executing and delivering to said city a release of all demands in respect of the matters aforesaid."

May 11th, 1875, J. B. Cleveland sent a written communication to the board of public works, expressing the desire that said board would submit the question contained in said second section, to the award and determination of such person or persons as said Cleveland and the board of finance and taxation of Jersey City shall agree upon.

May 13th, 1875, it was resolved, "that the board of public works of Jersey City (the board of finance and taxation concurring therein) hereby, according to legislative requirements, submits the question" (in exact accordance with the provisions and requirements of said act) "to the award and determination of such person or persons as said Cleveland and the board of finance and taxation of Jersey City shall agree upon."

This resolution was presented to the board of finance and taxation, and their concurrence requested and urged at several different meetings between May 13th, 1875, and June 25th, 1875. The resolution was referred by the board to the corporation counsel, and his report was submitted June 23d, 1875.

At the meeting of the board June 25th, 1875, the communications from Mr. Cleveland's counsel, and from the corporation counsel, were laid over until the next stated meeting.

July 17th, 1875, a rule was granted in vacation to show cause at November Term, why a suit of *mandamus* should not issue, commanding the board of finance and taxation to concur in the above resolution of the board of public works, and to agree with said Cleveland upon a person or persons, to whose award and determination said question might be submitted in accordance with the terms of said act.

Argued at November Term, 1876, before Justices Scudder, and Dixon.

For the relator, *Muirheid* and *J. F. Magee.*

For the respondents, *Lewis* and *Douglass.*

The opinion of the court was delivered by

SCUDDER, J.    Upon the hearing of this rule the counsel for the board of finance and taxation of Jersey City submits, by their direction, several causes why the writ of *mandamus* should not issue.

They say that they have these matters—the act, its provisions, and the proceedings of the board of public works, and of Mr. Cleveland—under consideration and advisement ; that they are not limited in their time for concurrence ; and that they have the right to exercise their discretion and free will in the agreement and appointment of a person or persons to act as arbitrator or arbitrators.    They also say that they have not refused to agree to appoint an arbitrator, but that they are as yet unable to agree with said Cleveland.

It appears, however, by the evidence taken, that Mr. Cleveland has, in person and by attorney, appeared at six or seven meetings of the board, and that he has each time urged them to name an arbitrator or arbitrators, expressing his willingness to assent to the appointment of any fair man or men they might name.    It also appears, that up to the time of the return of this rule, they have never named a person to act as arbitrator, nor have they taken any action in the matter.

This delay on the part of the board is tantamount to a refusal to concur in the resolution of the board of public works, and appoint an arbitrator or arbitrators, according to the requirements of the act of the legislature.    There need not be a positive refusal on the part of the public officers or municipal bodies to perform a duty enjoined upon them to authorize the interposition of this court by *mandamus*.    It is sufficient if there is a manifest intention not to perform it. Where the rights of others are concerned they cannot delay to act for an unreasonable time.    When called upon to use their discretion, it must not be withheld or exercised capriciously ; and when required to agree with another they must show a willingness to confer and meet the mind of such person, without which there can be no agreement.    If they object to act for reasons satisfactory to themselves and to their counsel, they should say so decidedly and promptly,

that the parties adversely interested may seek their remedy. If they are silent and delay unreasonably to act, this is constructively a refusal. *State* v. *Common Council of Rahway,* 4 *Vroom* 110.

It is candid to say that these respondents do object to proceed in this matter, and give their reasons.

First, because they are not required by the act of March 29th, 1875, to concur with the board of public works in the terms of the proposed reference, nor to appoint an arbitrator or arbitrators Section second enacts that *the board or authority aforesaid* shall, if said Cleveland desires it, submit the question, &c. "The board or authority aforesaid," as that referred to in the previous section as the board or authority having charge of the work on the reservoir, who are to prepare new plans and specifications for the continuance of the work, advertise for proposals, and award the contract as shall be provided by law in cases of other public improvements of the same or like nature. All such improvements, when exceeding in cost $2000, require the concurrent action of the board of public works, and the board of finance and taxation. (*Act*, 1874, *p*. 508, § 9.) They are, therefore, the board or authority named in section second, who shall submit the question to arbitration according to the terms used in the act of 1875 above cited. The use of the term "board or authority," does not limit this action to a single board, because the additional words, "or authority," enlarge the term, and the concluding words in section first, referring to the provision of the charter in cases of other public improvements of the same or like nature, make the intention plain; that this submission to reference must be concurred in as a contract would be awarded for a public improvement of like nature with this reservoir. It is clear that this would require the concurrence of both boards. The board of public works, by their resolution dated March 13th, 1875, have so interpreted this act, and made their action in the form of a concurrent resolution. It is of no force, therefore, unless the board of finance and taxation concur.

Another ground of refusal is, that the act of 1875 directs

that in determining what compensation, if any, is equitably due to Cleveland for his work on the reservoir, the arbitrator or arbitrators shall not charge him with any overpayment to Mitchell and Bridgeford for work done by them, if any such overpayment there was. It is true that as to all work done under this contract, the assignee, Cleveland, stands in the position of Mitchell and Bridgeford, the original contractors. But the legislature, in the exercise of their undoubted power, have arrested the work which was being done partly under contract, and partly outside of the contract, without legal authority, and compelled a settlement.

It is also competent for them to say what shall be the equitable terms of such settlement on the part of the city. If the city, by its officers, have overpaid Mitchell and Bridge-ford for the work they did under the contract, although this might be a legal charge against their assignee in the continu-ance of the contract by him until its completion, yet it might be inequitable, where the work is stopped, to charge this overpayment against the labor and materials which Cleve-land had furnished after the assignment to him. It was within the discretion of the legislature to determine this matter against the city, and they have done it. It is im-portant to notice the difference in the legislative control over municipal corporations and individuals. In case of the latter the law is defined, and the constitutional limitations are well understood. But with the former, Judge Dillon says : (*Mun. Corp.*, § 40.) " It is impossible to state with confidence, what limitations exist upon the power of the legislature over mu-nicipal corporations, as ordinarily constituted. The legisla-tures make, control, alter and abolish municipal charters at their will, and the only conceded limitations of their power to be found in the cases, are such as clearly belong to and directly affect the individual citizens, under the national or state constitutions." See *Dillon on Mun. Corp.*, ch. *IV*, § 32, &c.

Where a municipal board is acting in its public capacity in the discharge of duties imposed upon it by the legislature for

the public benefit, it may be said practically to be entirely within the control of the legislature; and if the legislature, in the exercise of its power for the public benefit, arrest a public improvement, the corporation cannot complain that its contract has been impaired, and object to the terms of settlement imposed by the legislative act.

Section two of the act of March 24th, 1875, provides for a submission to arbitration, if Cleveland desire it, of the question of what compensation, if any, is equitably due to him under the contract, and outside the contract.

It is objected that the boards of the city cannot be compelled to submit this question to arbitration, and that they are entitled to a trial by jury before the usual tribunals. They claim the protection of Article I, paragraph 7, of our constitution, which ordains that the right of trial by jury shall remain inviolate. The act, if not in express terms, by a fair implication, validates the express or implied contract between the city and Cleveland, under which he has done work and furnished materials outside the regularly executed original contract in writing with Mitchell and Bridgeford, and cures the informality caused by the failure to advertise and invite proposals for the work before it was done, according to the provisions of the charter. It is in the power of the legislature to dispense with these formalities, and give contractors their equitable right to compensation for services rendered, and materials furnished in good faith for the public benefit. *State, ex rel. Walter* v. *Union*, 4 *Vroom* 350; *State* v. *City of Newark*, 3 *Dutcher* 185; *State, Ruckman*, v. *Demarest*, 3 *Vroom* 528; *Campbell* v. *City of Kenosha*, 5 *Wall*. 194; *City* v. *Lamson*, 9 *Ib*. 477; *Cooley's Const. Lim*. 371, &c.

When the omission of these formalities is cured, the only matter remaining to be settled between the city and the contractor, is the amount of compensation he shall receive. This may be submitted to any impartial tribunal the legislature may designate. Justice Baldwin, in *Bonaparte* v. *The Camden & Amboy R. R. Co., Bald*. 221, says, that the trial by jury is preserved inviolate in the sense of the constitution, when in all criminal cases, and in civil cases where a right is

in controversy in a court of law, it is secured to each party. See, also, *Beekman* v. *Saratoga, &c., R. R.*, 3 *Paige* 75.

However much the legality of such compulsory reference may be controverted in transactions between private persons, or private corporations; and even in some cases where public corporations have been parties—see *People* v. *Hawes*, 37 *Barb.* 440; *Plimpton* v. *Somerset*, 33 *Vt.* 283—the better law is, that municipal corporations, being creatures of the legislative power and subordinate parts of the government of the state, are subject to the legislative will to the extent that it may provide for the appointment of a tribunal for the adjustment of claims against them, without a jury trial. *Dunmore's appeal*, 52 *Penn. St.* 374; *Darlington* v. *Mayor of New York*, 31 *N. Y.* 204.

The state may submit claims against itself to arbitration by legislative act appointing commissioners to assess. In the divisions of counties, townships and districts, it is quite common to appoint commissioners to determine lines, adjust rights of property and apportion debts. A submission to arbitration may be made by a public corporation by a resolution or ordinance adopted at a meeting thereof. *Brady* v. *Mayor, &c., of Brooklyn*, 1 *Barb.* 584. There would, therefore, appear to be no reason why the state, acting for and as the superior of a municipal corporation, may not direct by statute a like submission.

If the private person who is to be affected by such arbitration consents, or as is provided in this case, puts it in motion by his request made to the boards of the city having authority to act in the premises, I see no reason why they should not be required to execute the legislative will by concurring and appointing arbitrators to adjust the claim of the relator.

There has been a full presentation of the facts and a discussion of all the questions of law on the rule to show cause. A peremptory *mandamus* should, therefore, be issued in the first instance, and it is accordingly ordered in the terms used in the legislative act.