[No. 2937. Decided June 20, 1898.]

THE STATE OF WASHINGTON, *on the Relation of* W. S. *Grinsfelder, Respondent,* v. THE SPOKANE STREET RAILWAY COMPANY, *Appellant.*

MANDAMUS TO RAILWAY COMPANY — OPERATION OF LINE — PRIOR DEMAND — PARTIES — QUASI PUBLIC CORPORATIONS — DISUSE OF FRANCHISES — DEDICATION OF STREETS.

Mandamus will lie to compel a street railway company to resume the operation of a line which it has discontinued without any prior demand for the performance of its duty to the public in that respect.

A private individual who has bought considerable property near the end of a street railway line and has improved the property and made his residence there, relying upon the operation of the line, has such a material interest as to be a proper relator in proceedings by mandamus to enforce the performance of the railway company's public duty to operate its line.

Where a street railway company attempts to discontinue the operation of a line, after acquiring the right and commencing the performance of the service, its duty to continue the operation of the railway may be enforced by mandamus.

A street railway company which has occupied public highways for several years in the operation of its line without a grant or privilege or franchise from the municipality, cannot urge that objection for the purpose of relief against its enforced continuance to operate its line thereon, when its use and occupation of such highways has been undisturbed.

A street railway company which receives its franchises from the state and enters upon the enjoyment of them cannot cease to perform the functions which were the consideration for the grant of such franchises without the consent of the granting power.

In platting an addition to a city and dedicating streets therein to the public, the dedicator cannot reserve the right to operate street railway lines upon the streets, as any condition annexed to a dedication falls, but the grant stands.

Appeal from Superior Court, Spokane County.—Hon. WM. E. RICHARDSON, Judge. Affirmed.

*Thomas C. Griffitts*, for appellant.

*Graves, Wolf & Graves*, for respondent.

The opinion of the court was delivered by

REAVIS, J.—Application by relator for a writ of mandamus to compel the defendant, a street railway company, to operate a line of street railway to Bell Park addition to the city of Spokane. The alternative writ, founded on the affidavit of relator, was demurred to by the defendant, and, upon the overruling of the demurrer by the superior court, defendant answered denying some of the facts stated in the affidavit and setting up new matter, to which reply was made by relator. Upon the issues raised a trial was had before the court without the intervention of a jury, and findings of fact made by the court. Defendant excepted to a number of the findings, because not sustained by the evidence, but we find substantial evidence to sustain each finding of the court, and, as this is a law action, the findings of fact by the court have the same force and effect as a verdict of the jury, and this court cannot therefore weigh conflicting testimony in the case.

The material facts found by the court are, substantially, that about the 17th of April, 1888, the Ross Park street railway company was incorporated under the laws of the state, for the purpose of constructing, equipping, operating and maintaining a system of street railways in the city and county of Spokane, for the transportation of freight and passengers, such railways to be operated by steam, horses or electricity; and likewise to borrow money and to secure the payment of the same by mortgage on its property and franchises. That subsequent to the incorporation, and from time to time until the spring of 1892, the Ross Park street railway company, by building, leasing and purchasing, operated a line of street railway commencing at the corner of

Howard and Riverside avenue in the city of Spokane, running thence along Howard street to Front street; thence on Front street to Olive street; thence east on Olive street to Hamilton street; thence north upon Hamilton street to Illinois avenue; thence east and northeasterly on Illinois avenue to C street; thence north on C street to Diamond street; and thence east on Diamond street to the northeast corner of block one of Bell Park addition to Spokane. That all of the streets mentioned were within the corporate limits of Spokane, to and including C street, and the remainder of the streets were in platted additions to the city. The line of railway extends to the intersection of Illinois avenue and Hamilton street near a point known as Martha avenue, to the town of Hillyard. The Hillyard line was built by a separate corporation known as the Arlington Heights Street Railway Company. Subsequently, in the year 1894, the defendant, through a corporation known as the Washington Water Power Company, acquired control of all the lines of Ross Park Street Railway Company and of the Arlington Heights Street Railway Company, and operated the same thereafter, until May, 1897, as one system. At that date a sale was made of all the lines of the Ross Park Street Railway Company by foreclosure of a mortgage executed to the Franklin Trust Company to secure payment of bonds, at which sale the Franklin Trust Company became a purchaser, buying all the property rights and franchises along the lines and appertaining thereto. On the same day a lease was executed by the Franklin Trust Company to defendant, by which the defendant covenanted to operate the said lines and pay, as rent therefor, one hundred per cent of the gross earnings to the Washington Water Power Company, the line of street railway running from Illinois avenue to the northeast corner of block one of Bell Park addition being expressly men-

tioned and described in the lease, and being a portion of
the line convenanted by the defendant in the lease to be
by it run and operated.  Thereupon defendant entered up-
on, and continued under the lease to operate, all the said
lines of street railway until a few days before the com-
mencement of this action in December, 1897, when it dis-
continued that portion of the line from Illinois avenue to
Bell Park addition.  That at all times during the operation
of these lines they were operated as one system, under one
management, and passengers paid but one fare for the en-
tire trip.  In December, 1897, a short time before the com-
mencement of this action, the defendant ceased to operate
that portion of the railway line extending from the inter-
section of Illinois avenue and Hamilton street, at Martha
street, to Bell Park, which in the findings of fact is desig-
nated as the Minnehaha Park line.  Its poles, wires and
tracks were, however, left in the street, and have been left
there ever since, and the defendant has declared no inten-
tion to remove the same or not to recommence the operation
of the line at some future date.  There are about forty
families living reasonably adjacent to the Minnehaha Park
line; who are in the habit of using the same for street car
facilities. . There were daily carried over this line from
eighty to one hundred and twenty people.  A large number
of these people have built houses there, improved their lands
and yards and taken up their residence there, because of
the street car facilities afforded by said line.  The relator
lives adjacent to this line, and several years ago commenced
to reside there, and owns considerable property, which he
has improved, relying upon the facilities afforded by this
street railway line.  No franchise was ever granted by the
authorities of the city or county of Spokane to the defend-
ant, or any of its predecessors in interest, for the occupa-
tion of Hamilton street, C street or Diamond street.  At

the time the line along Hamilton street was built, Hamilton street was not within the city limits. In 1891 the addition within which lies Hamilton street was included within the limits of the city. C street and Diamond street have not yet been included in the corporate limits, but all the streets mentioned are within platted additions to the city of Spokane. Hamilton street was dedicated by the persons along the northeast addition to Ross Park addition, and in the dedication of the streets in that addition the dedicators reserved the exclusive right to lay street railways along the streets, and, prior to the building of the line, the defendant, or its predecessors in interest, received permission from the dedicators and owners of the property along the street to lay the same. Since Hamilton street has come within the city limits, the corporate authorities have not interfered with the occupation of the street by the railway company, and it has been in the undisputed use and occupation thereof. Along C street and Diamond street, a like reservation was contained in the dedication of the additions through and along which these streets ran, but no permission has been obtained from the dedicators or the adjacent property owners by the street railway company or its predecessors in interest to occupy said streets. It has, however, continuously occupied the same since 1892, and no objection has ever been made, so far as appears, by the county authorities, and at the time of ceasing to operate said line it was in undisturbed use and occupation of the said streets. All of the Minnehaha Park line and all of the Ross Park line run along and upon public streets of the city of Spokane, and public streets of additions thereto dedicated according to statute as public highways. The system operated by the defendant includes the major portion of the street railway mileage in the city of Spokane. It is not found what is the actual cost of operating the Minnehaha Park line. The

court found that a half-hour service on the Minnehaha Park line, run in connection with the Ross Park line, is a reasonable operation of the road, and is such an operation as the company has maintained for a period of over five years. No demand was made by any person upon the defendant to continue or resume the operation of the line. Upon the findings of fact the superior court entered judgment awarding a peremptory writ of mandamus commanding the defendant to run and operate an electric car or cars on that portion of this road in the city of Spokane and additions mentioned and described in the findings of fact as the Minnehaha Park line.

1. It is urged by the defendant, appellant here, that, no demand having been made upon it to resume the operation of its line, the action cannot be maintained. It is true that, upon the necessity of a previous demand and refusal to perform the act which it is sought to coerce by mandamus, the authorities are not altogether reconcilable. Mr. High says:

" The better doctrine, however, seems to be that which recognizes a distinction between duties of a public nature, or those which affect the public at large, and duties of a merely private nature, affecting only the rights of individuals. And while in the latter class of cases, where the person aggrieved claims the immediate and personal benefit of the act or duty whose performance is sought, demand and refusal are held to be necessary as a condition precedent to relief by mandamus, in the former class, the duty being strictly of a public nature, not affecting individual interests, and there being no one specially empowered to demand its performance, there is no necessity for a literal demand and refusal. In such cases the law itself stands in lieu of a demand, and the omission to perform the required duty in place of a refusal." High, Extraordinary Legal Remedies (2d ed.), § 13. See, also, Id., § 41.

In *Union Pacific R. R. Co. v. Hall*, 91 U. S. 343, there was under consideration an application by private parties to

compel the Union Pacific Railroad Company to operate its line as one continuous system into the town of Council Bluffs, Iowa. It was urged that these parties could not lawfully be relators in the suit, but it should have been brought by the attorney general of the United States, or the district attorney of the district of Iowa, because the object of the suit was to compel the performance of a public duty. The court concludes:

" There is, we think, a decided preponderance of American authority in favor of the doctrine, that private persons may move for a mandamus to enforce a public duty, not due to the government as such, without the intervention of the government law-officer."

In consonance with these views may be mentioned *State ex rel. Rice v. County Judge*, 7 Iowa, 186; *Virginia v. Rives*, 100 U. S. 313; *Attorney General v. Boston*, 123 Mass. 460.

In *Northern Pacific R. R. Co. v. Territory*, 3 Wash. T. 303 (13 Pac. 604), it was said by the court:

" No demand for the facilities required was ever made upon the company. That a demand would be necessary as a foundation of proceedings of this nature to establish a mere private right, is conceded; but it is claimed by appellee that this was a question of public right and that the company was neglecting to perform a duty which it owed to the public, and that in such a case a demand was not necessary. We think this claim is established by the facts and law of this case."

It may be noted that appellant did not deny that it had discontinued the operation of its street railway line indefinitely. The rule which requires a demand to be made before application to the court for a writ of mandate is founded upon reason; that is, it is unjust that defendant should be subjected to the payment of costs for a failure of some duty which it was willing to perform, had it been requested to do so.

In *Attorney General v. Boston, supra,* the supreme court of Massachusetts said:

"But where a municipal corporation or board has distinctly manifested its intention not to perform a definite public duty, clearly required of it by law, no demand is necessary before applying for the writ."

The appellant's duty was a public one, due to the public, if due at all, and therefore falls within the rule announced by the best authority. Upon the facts found, it was not absolutely necessary for the relator to make a demand for the operation of the line.

2. It is also suggested that the relator has not such interest in the subject matter of the action as will enable him to maintain the action. It is shown, however, he has a material, individual interest in enforcing the performance of a duty to the public. *Union Pacific R. R. Co. v. Hall, supra; Loader v. Brooklyn Heights R. R. Co.,* 35 N. Y. Supp. 996; *Savannah & O. Canal Co. v. Shuman,* 91 Ga. 400 (17 S. E. 937, 44 Am. St. Rep. 43).

3. It is maintained by appellant that the facts failed to show any legal duty which it as a corporation is bound, either by law or its charter, to do or perform. The statute regulating mandamus in this state (Bal. Code, § 5755, Laws 1895, p. 117, § 16), is as follows:

"It may be issued by any court, except a justice's or a police court, to any inferior tribunal, corporation, board or person, to compel the performance of an act which the law especially enjoins as a duty resulting from an office, trust or station, or to compel the admission of a party to the use and enjoyment of a right or office to which he is entitled, and from which he is unlawfully precluded by such inferior tribunal, corporation, board or person."

High's Extraordinary Legal Remedies, § 1, defines the writ as follows:

" The modern writ of mandamus may be defined as a command issuing from a common-law court of competent jurisdiction,. in the name of the state or sovereign, directed to some corporation, officer or inferior court, requiring the performance of a particular duty therein specified, which duty results from the official station of the party to whom the writ is directed, or from operation of law."

The controversy is whether, under the principles of the common law, a corporation authorized to transact the business which appellant is authorized to do, and which it has actually transacted, in the acquisition and operation of its street railway lines, owes a duty to the public to .continue the operation. The franchise was granted to appellant by the state, not for its profit alone or that of its stockholders, but in a large measure for the public benefit. Peculiar privileges were conferred upon it in consideration that it would provide facilities for communication and intercourse for the public. It is a common carrier. *New York, etc., R. R. Co. v. Winans,* 17 How. 30; Booth, Street Railway Law, § 1; *Talcott v. Pine Grove Township,* 23 Fed. Cas. 653. It was granted the power of eminent domain, a part of the sovereignty of the state, and, with the consent of the municipalities, it may lay its tracks over the public streets and highways. Such corporations, then, may not, by their own acts, disable themselves from performing the functions which were the consideration for the public grant. *Thomas v. Railroad Co.,* 101 U. S. 71.

The opening of a highway or ferry, and the common carriage of persons or property over them, was at common law a franchise and a matter of governmental concern. It was a part of the subjects in immediate possession of the sovereign power, and to exercise which demanded a special grant or charter from the sovereign. Such avocations, in their nature and history, are unlike the private avocations of milling, hotel keeping and traffic, which all may be pursued at

pleasure, unless restrained by the exercise of police power. Judge Kent says, in vol. 3, Commentaries, p. 458, that there are certain franchises which are understood to be royal privileges in the hands of a subject. The right to set up a ferry or road, and the taking of tolls, is one of them, and in this the public has an interest. In 2 Blackstone's Commentaries, 37, it is said that a franchise is a branch of the royal prerogative in the hands of the subject, such as the right of taking toll for a bridge, way or wharf. In *Prosser v. Wapello County*, 18 Iowa, 327, it was held by Judge DILLON that a public ferry franchise could only be conferred by the government, and must be founded on grant, license or prescription. Ownership of the soil on each side of a stream does not confer the right to establish thereon without a grant a public ferry at which tolls are charged. These rights, then, are held by the grantee, the holder of the franchise, as the agent and trustee for the sovereign power, and are in no sense private, but continue after, as well as before, the grant to be but a portion of the public interests. The absolute commercial and business necessity for permanence when established forbade, from the earliest years, the manifest impolicy of leaving this interest to the laws of supply and demand, which thus far have sufficiently supplied the community with hotels, mills, etc. And it is not in degree only that these franchises differ from mills and inns. The one is private property; the other is a public function, which originally resided in the government, and, when delegated to either persons or corporations, still retains the public use.

In *Gates v. Boston, etc., R. R. Co.*, 53 Conn. 333 (5 Atl. 695), it was said:

" One public right consists in the continuous uses of the railroad, its franchise and corporate property, in the manner and for the purposes contemplated by the terms of the

charter. All these corporate franchises and this property are held subject to, and charged with, this obligation."

In an early case, that of *King v. Severn & Wye Ry. Co.*, 2 Barn. & Ald. 646, a writ of mandamus was issued to compel the restoration of a tramroad and the re-laying of the track which the company had worn out. In *State v. Hartford, etc., R. R. Co.*, 29 Conn. 538, a railroad company was incorporated to construct and operate a railroad for the transportation of passengers and freight between certain main points. The road was constructed, and thereafter it discontinued operating its trains to one of the termini. The court said:

" We hardly know what doubtful principles of law are thought to be involved in the case. . . . All jurists and judges will at once agree that chartered companies are obliged fairly and fully to carry out the objects for which they are created, and that they can be compelled by mandamus to do it; and it will not be questioned that in the case of public highways, whether turnpikes or railroads, they are bound to keep them fit for use, and, in case of railroads, to keep them furnished with suitable cars, engines and attendants, without which they could not be used at all."

The supreme court of Maine, in *Railroad Commissioners v. Portland, etc., R. R. Co.*, 63 Me. 269 (18 Am. Rep. 208), compelled the erection and maintenance of a depot for freight and passengers upon a line of railroad. The supreme court of the United States, in *Union Pacific R. R. Co. v. Hall, supra*, upon the relation of private parties by mandamus, compelled the Union Pacific railroad company to operate its road as a continuous line from Council Bluffs westward. In *Potwin Place v. Topeka Ry. Co.*, 51 Kan. 609 (33 Pac. 309; 37 Am. St. Rep. 312), it was held that the performance of the duties which a street railway company owes to the public may be enforced by mandamus.

There lines of street railway were operated in connection
with a system of railways in the city of Topeka, and then
discontinued, when the law was invoked. In *San Antonio
St. Ry. Co. v. State ex rel. Elmendorf*, 90 Tex. 520 (38
S. W. 54, 59 Am. St. Rep. 834), the supreme court of
Texas held that, where a street railway company had un-
dertaken the operation of its line upon certain streets, the
public acquired a right to the operation of the lines which
could be enforced by mandamus. It was also held that it
was no defense to a writ of mandamus that a city might for-
feit its franchise for failure to continue to operate its cars
over a portion of the line; and it was further determined
that an answer which set up that the operation of the line
was a continual loss to defendant, that the revenues re-
ceived were not sufficient to pay the actual expenses of its
operation, and that if it continued the operation of the line
the value of its whole property would be consumed and it
would become bankrupt, was no defense, for the reason
that, so long as it retained its franchise, it would not be al-
lowed to urge, as an excuse for failure to perform the duties
imposed by it, that it was non-profitable.

A similar principle is sustained with regard to a canal
company in *Savannah & O. Canal Co. v. Shuman, supra*,
where a peremptory writ of mandamus was issued against a
canal company requiring it to keep its canal in a navigable
condition. It was also held that the answer of the defend-
ant, that the operation of the canal was unprofitable, was
no defense; that it could not retain its franchises and re-
fuse to perform its duty.

In *Haugen v. Albina Light & Water Co.*, 21 Ore. 411
(28 Pac. 244), it was determined that a corporation formed
for the purpose of supplying a city and its inhabitants with
water, and which had laid its pipes in the streets of the city

for that purpose, could be compelled by mandamus to supply persons living along the streets with water.

Counsel for appellant has called our attention to two cases to support the position that mandamus cannot be maintained here; one, *People v. Rome, W. & O. R. R. Co.*, 103 N. Y. 95 (8 N. E. 369). But the statute of New York provided that a peremptory writ of mandamus is only authorized, in the first instance, " where the applicant's right to a mandamus depends only upon questions of law." In that case the material averments of the petition of the attorney general were put in issue, and the facts were that a short line of road was abandoned where there was another line, only two miles longer, that accommodated the same public. The court said:

" The present line [in operation] is a little longer than the one originally adopted and slightly varying therefrom, but it accommodates the people of the state and the people of the locality substantially as well as the line originally adopted. Suppose two roads were consolidated and the lines of the two between two places were parallel and near to each other, could the consolidated road be compelled by mandamus to operate both lines or could it discharge its duty to the public by using only one line?"

And the court concluded that one only was sufficient in that case. The conclusion in no wise negatives the established principle of the public duty owed by the railroad company.

The other authority is *State ex rel. Scully v. Canal and Claiborne Streets R. R. Co.*, 23 La. An. 333, which was an application for a writ of mandamus to compel the officers of a street railway company to collect from subscribers to the capital stock of the corporation their delinquent subscriptions. The relators were stockholders. The defense was that the amounts to be paid and the times of payment were, by the charter and agreement signed by the relators,

left to the discretion of the board of directors, and the provision was that "five per cent. of each subscription shall be payable at the signing of these articles, and the balance shall be paid at such times and in such amounts or installments as the board of directors may order." The court there held that, as a general rule, a writ of mandamus would not lie to compel an officer or a company to do an act coming within the range of their duties, where the law or the charter under which they act has vested in them a discretion to do or not to do it. The case is clearly not in point here, for no discretion is vested by our laws in the charter of a street railway company that would authorize its discontinuance of a street railway line which it had already established and operated. Permanency in the service of the public in a reasonable manner is an essential duty in all such avocations.

4. But it is also urged by counsel for appellant that it had no grant or privilege or franchise from the city or county to operate its tracks upon the public streets, and has simply a license from the owners of the additions through which these streets ran. But it has continuously occupied these streets, since 1892, with its lines, and no objection has been made by the city or county authorities to such occupation, and it is in undisturbed use and occupation of these streets. The city could not object now. *Spokane Street Ry. Co. v. Spokane Falls*, 6 Wash. 521 (33 Pac. 1072). We do not think it can urge this objection so long as it is undisturbed in its use of the streets. We conclude that a corporation of the nature of appellant, receiving its franchises from the state and entering upon the enjoyment of them, cannot cease to perform the functions which were the consideration for the grant of such franchises without the consent of the granting power. The question of the public convenience is one which appeals to the discretion

of the court. The distinction between a franchise granted by the state of the right to exist and engage in peculiarly favored occupations, and upon which special and peculiar burdens are imposed, and the license granted by a municipality to such corporations to transact their business within its limits, was discussed by this court in a recent case. *Commercial Electric Light & Power Co. v. Tacoma*, 17 Wash. 661 (50 Pac. 592). It was there stated that an electrical company was a quasi public corporation, and might not, without the consent of the state, disable itself from the performance of its public duties by transferring its corporate privileges and franchises, but that it might transfer to others the privileges granted by the municipal corporation to perform its business in the public streets within the limits of the city. See, also, *Belleville v. Citizens Horse Ry. Co.*, 152 Ill. 171 (38 N. E. 584).

In platted additions to a town, when streets are laid out thereon, the fee belongs to the public. Bal. Code, § 1276. Elliott, Roads & Streets, p. 87; *City of Des Moines v. Hall*, 24 Iowa, 234.

If any condition is annexed to such dedication, the condition falls, but the grant stands. Elliott, Roads & Streets, pp. 88, 109 and 110; *City of Des Moines v. Hall, supra*, 241; *Richards v. Cincinnati*, 31 Ohio St. 506.

The judgment of the superior court is affirmed.

ANDERS and DUNBAR, JJ., concur.