SOCIALIST PARTY, Petitioner, *v.* HORACE M. TOWNER, GOVERNOR OF PORTO RICO, Respondent.

No. 238. Submitted February 25, 1926.—Decided March 12, 1926.

*Bolívar Pagán* for the petitioner.

MR. JUSTICE WOLF delivered the opinion of the court.

To obtain a writ of mandamus from this court the petitioner, the Socialist Party, has presented no facts that are essentially different from those that were placed before us in the petition of Bolívar Pagán whose application was denied

by our judgment and opinion of February 3, 1926. Under section 1 of the Elections Law of 1924, Laws of that year, page 1, the two persons representing the two principal political parties of the Island are to be appointed by the Governor on recommendation of the central organizations of the said parties, and Bolívar Pagán claimed the right to be named as representing the Socialist Party. Bolívar Pagán as the sole person proposed for the Board of Elections, had a sufficient interest to present the writ and our judgment in no wise was based on such lack of interest. We refused the writ on other grounds. We pointed out in *Torres* v. *Municipal Council of Guánica,* 33 P.R.R. 337, that while a political party might have a correlative right the person entitled to a seat in a municipal assembly could not be excluded.

Coming to the merits, we are met with the suggestion that the instant case can not be distinguished from the *Torres Case, 'supra.* Verbally there is not much, if any, difference in some of the words used by the Legislature. In the Municipal Case the Assembly should name ''on recommendation of the local directing organization;'' for the Election Board the Governor should name ''at the recommendation of the central governing board of the party.'' The conditions, however, surrounding the two namings are totally distinct.

*Torres* v. *Guánica* proceeded on the theory that the real entity with power to appoint was the interested political party and that the power in the municipal assembly was merely residuary or ultimate. Tracing a little the history of political appointments we said that the Legislature had the right to place the filling of a vacancy in a political party and had done so. A moving idea also was that the will of a sovereign people in electing representatives might otherwise be defeated.

While an election board is highly important it has been

selected in innumerable ways. In Porto Rico it is a permanent board. It is not elected and responsibility for its selection has been placed in the Governor directly by the Legislature and indirectly by the Organic Act.

"That the supreme executive power shall be vested in an executive officer whose official title shall be 'The Governor of Porto Rico.'" "He shall have general supervision and control of all departments and bureaus and of the Government of Porto Rico." "He shall commission all officers that he may be authorized to appoint." These are some of the provisions of section 12 of the Organic Act.

As indicated in the case we have been analyzing, the power of appointment may be vested by the Legislature in the Governor or elsewhere; perhaps with certain limitations not specifically mentioned in the Organic Act. The principal consideration of this opinion is that when the Legislature elects to put a power of appointment in the Governor the authority so conferred falls within the executive appointing power with the consequent privileges and responsibilities.

While the political scientists doubt the complete accuracy of the tripartite division of the governmental powers in the Federal Government, the States and Territories, yet for most legal purposes there is a clear line of cleavage, as among the executive, legislative and judicial powers. In the Governor is vested the executive power. Appointments are historically and normally that part of the executive power wherein discretion may be used. 38 C. J. 700. While the Legislature may put limitations on both the executive and the judicial power, it can not annul or destroy either. Some of the original power must remain. The power of appointment is fundamentally one of selection and discretion; therefore, when the Legislature, to fill an election board, invokes the executive appointing power with its corresponding discrimination and responsibility, it must intend the ordinary

consequences. If the appointment to be made in no wise falls within the ordinary executive appointing powers of the Governor we do not believe that the Legislature may compel the Governor to act at all. Under his draft of executive power the Governor cannot be called upon to make an appointment without exercising discretion.

Reverting to the *Torres Case*, it is doubtful whether in selecting members for its ranks, when the choice falls upon the municipal assembly, it is exercising an executive power of appointment.

The duty devolving upon the Governor, as we said in *Pagán* v. *Towner, supra,* is discretional up to a certain point. While the court may not control the particular selection to be made, it may limit the said selection to the ranks of the Socialist Party and the persons recommended by it, always supposing that the said party did obtain the second highest number of votes in the last election. Such a limitation the Legislature has a right to make. Other cases might arise where the writ would lie, but the petitioner has brought itself within no recognizable exception to the rule as laid down by us in the *Pagán Case, supra,* that the Governor is not bound to name the sole person whose name is submitted.

Furthermore, despite the fact that three petitions in the two cases for the naming of Bolívar Pagán have been presented to us the petitioner has failed to set forth the reasons given by the Governor for refusing to name the said Bolívar Pagán, although the petition tends to show that the reasons were known to petitioner. *Non constat*, independently of the foregoing considerations, that the reasons for not naming Bolívar Pagán would have justified the action of the Governor. The petitioner failed to put the whole facts before this court.

The writ will not issue.

DISSENTING OPINION OF MR. JUSTICE FRANCO SOTO.

The opinion and judgment of the court of March 12, 1926, compels me to say something more than I said in my dissent to the opinion of the court of February 3, 1926.

The question involved is the same and I have not been able to find in the new opinion of the court delivered by Mr. Justice Wolf anything that would cause me to alter my conclusions. If so, I would state it with the pleasure of one who discovers his error, for the most unfortunate injustices are those that rest on mistakes.

The court acknowledges that under the wording of the statute this case can not be differentiated from the case of *Torres* v. *Municipal Assembly of Guánica,* 33 P.R.R. 337; but makes the reservation that they are entirely distinct because of the surrounding conditions. One of the conditions seems to be that the petitioner in the instant case "failed to bring all of the facts before this court." I think that I covered this point fully in my former opinion. I will add now that in the *Torres Case, supra,* it was held that the court was satisfied "from the citations of the petitioner that in matters of such a high public nature a previous demand to perform the act in question is unnecessary." And the authorities which then convinced the court are those cited in his brief by counsel for Torres, as follows:

"The authorities are not harmonious on the question as to when a demand is necessary as a precedent condition to granting the writ. It is undoubtedly the general if not undeviating rule that in cases where private interests only are involved, a demand must be made and alleged. There is a distinction, however, between cases involving mere private right to have a duty performed, and those in which public interests generally are affected, and in which one citizen has the same interest in the perfomance of a public duty as another. Where no such general interests are involved and merely private rights are affected, the relator must, in a proceeding by mandamus, allege and prove demand and refusal by the person or persons whom it is sought to coerce by the writ; but where a duty is strictly of a public nature, as where it is due by a public officer and is not a special

duty affecting peculiarly the relator, there is no one specially empowered to demand its performance and there is no necessity for a demand and refusal. In such case the law imposing the duty is a continuing demand and neglect of performance a continuing refusal. State v. County Judge of Marshall, 7 Ia. 186; Chumersero v. Potts, 2 Mont. 242; Commonwealth v. Comm'rs of Alleghany, 37 Pa. St. 237; State v. Bailey, 7 Ia. 390; People v. Kipley, 49 N.E. 229, 171 Ill. 44; Attorney General v. Boston, 123 Mass. 460; State v. Board of Finance, 38 N.J.L. 259; State v. Jacksonville, 22 Fla. 21.'' 2 Spel ling, pages 1191–92.

''According to the better view where the duty sought to be enforced is one owing to the public generally, no demand for performance is requisite to place the respondent in default as a prerequisite to the application for mandamus to compel the performance of the duty; in such cases the law itself stands in lieu of a demand and the omission to perform the required duty in place of a refusal. People v. Kipley, 171 Ill. 44, 49 N.E. 229, 41 L.R.A. 775; State v. Spokane St. R. Co., 19 Wash. 518, 53 Pac. 719, 67 A.S.R. 739, 41 L.R.A. 515.'' 18 R.C.L. page 123.

It would be superfluous to deny the high character or public importance of the question under discussion. Why, then, be persistent in this case by insisting so much on the reasons or facts which the petitioner seems to be compelled to state in his complaint for explaining the respondent's refusal? And if, however, this has been alleged by explaining that no reason has been adduced and rather shows the passive and reserved attitude of the respondent, why still demand a statement of all the facts or reasons if they are known only to the respondent? This is the impracticable condition attempted to be imposed upon the petitioner, for only by exerting an extraordinary psychical or telepathic power could he put himself in communication with the respondent's reservation.

The *Torres Case, supra,* was based on principles of general application. For example, it does not correct the theory that ''a ministerial legal duty may exist although the person sought to be compelled by mandamus would have to interpret a law or examine a proposed member to see if he had the necessary

qualifications." 33 P.R.R. 341. It was also held that the Legislature of Porto Rico had authority to leave the filling of a vacancy to political organizations, and the mind of this court covers broader considerations in the sense that by the Constitution of the United States the power of appointment may be placed by Congress in the President or in the heads of departments without doubting that Congress has a right to place such power of appointment elsewhere, and by thus combining ideas the court holds that the history in the United States has shown that the political parties are recognized for various purposes as legal entities. 33 P.R.R. 340. Munro on the Government of the United States, pp. 330, 341, says:

"Be the theory of the Constitution as it may, political organizations have in fact become great determining elements of the policy of the American Government.

"American party organizations have developed out of rudimentary principles, but at present they are the most perfect and efficient in their class in any country."

Nevertheless, it is difficult to understand why it was necessary to go so far in theory and then, in practice, the ministerial power of appointment, on the recommendation of the organization of the dominant political parties, be limited only to compel members of municipal assemblies to obey blindly. However, if my notion of justice is correct, I strive against thinking that its rules may be in such a way elastic as to make its efficacy dependent on the more or less hierarchical conditions of a respondent.

I admit that the respondent in this case has discretion in exercising his ministerial power of appointment, and although there is no discrepancy in that such discretion has its limit, my point of view is that it can not have more limitation than that which the municipal assemblies could have exercised when filling the vacancies that had occurred in their own organization. However, it is again held that the power to appoint conferred upon the Governor falls within the executive power of appointment with the resulting privileges and

responsibilities and that such power is one of selection and discretion. This is correct as regards the appointments which the Governor was empowered to make originally by our Organic Act (Jones Act), but with the exception of such appointments as specified in the Organic Act there is no general clause therein providing that when there is a vacancy in any public office the Governor shall appoint a person to fill it. Congress gave us a representative government with the three historical coordinate powers and did not deprive our Legislature of the power to authorize others to make appointments or of the right to delegate by statute to some one else the ministerial power of appointment. The Legislature of Porto Rico exercised its authority in enacting the Elections Law, and the following is what it said practically to the Governor in section 1 of that law: We have provided the necessary means to create, as we have created, an Insular Board of Elections and we desire you to appoint the persons who shall fill the designated offices. Do you want to appoint them for us and in such a way as to comply with our express intention of insuring a non-partisan board?

This way in which the Legislature exercised its authority, as granted to it by the Organic Act, is not an invasion of the executive power. If the local legislative power could not determine the conditions in which an office should be filled, or the qualifications of the person eligible thereto and the suggestions that should prevail by reason of the recognition of the principal political parties and thus give actual effect to the intention of the Legislature, then it would be said that the Legislature had no constitutional power to enact section 1 of the Elections Law in the terms in which it is worded. However, that provision is not an innovation in the history of the government of the States. The requisite as to the political affiliation of the person to be appointed and the recommendation or selection by the dominant political parties is the statutory rule in many states and not the

exception. The law interpreted in the *Torres Case* is an example of the general rule. The case reported in 61 S. W. 218, is another practical example of how the Governor had to follow the recommendation of a certain organization to form a board of examiners.

Given the general theory of this case, and it having been admitted that the respondent has only some discretion in exercising his delegated power to appoint, I am not convinced that it is just to deny the writ of mandamus without issuing, at least, an alternative writ and thus giving an opportunity to ascertain the extent of such discretion.