PARTIDO SOCIALISTA, peticionario, *v.* HORACE M. TOWNER, en su carácter de Gobernador de Puerto Rico, demandado.

No. 238.—*Sometido:* Febrero 25, 1926.  *Resuelto:* Marzo 12, 1926.

ELECCIONES—DISTRITOS O PRECINTOS ELECTORALES Y FUNCIONARIOS ELECTORALES—NOMBRAMIENTO, CONDICIONES Y TÉRMINO DEL CARGO—REPRESENTANTE DE LOS PARTIDOS POLÍTICOS—MIEMBROS JUNTA INSULAR DE ELECCIONES. — Habiendo elegido la Legislatura dejar la facultad de nombramiento de los miembros de la Junta Insular de Elecciones al Gobernador y no a los partidos políticos interesados, la autoridad así conferida, con ciertas limitaciones, cae dentro del poder discrecional de nombramiento del ejecutivo (*Torres v. Concejo Municipal de Guánica,* 33: 349, distinguido; *Pagán v. Towner,* 35: 1, aprobado).

SOLICITUD DE MANDAMUS (jurisdicción original), para que el Gobernador proceda a nombrar a un miembro de la Junta Insular de Elecciones. · *Sin lugar.*

*Bolívar Pagán,* abogado del peticionario.

EL JUEZ ASOCIADO SEÑOR WOLF, emitió la opinión del tribunal.

Para obtener un auto de *mandamus* de esta corte el peticionario, el Partido Socialista, no ha presentado hechos que sean esencialmente diferentes de aquellos que quedaron ante nuestra consideración en la solicitud de Bolívar Pagán cuya petición fué negada por nuestra sentencia y opinión de febrero 3, 1926.  De acuerdo con la sección 1 de la Ley Electoral de 1924, leyes de ese año, p. 1, las dos personas representando los dos partidos políticos principales de la Isla serán nombrados por el Gobernador a propuesta de los organismos directivos centrales de dichos partidos, y Bolívar Pagán reclamaba el derecho a ser nombrado como representando al Partido Socialista.  Bolívar Pagán, como única persona propuesta para la Junta de Elecciones, tenía un interés suficiente en solicitar el auto y nuestra sentencia en manera alguna se fundó en tal falta de interés.  Rehusamos expedir el auto por otros fundamentos.  Indicamos en el caso de *Torres* v. *Concejo Municipal de Guánica,* 33 D.P.R. 349, que si bien un partido político podría tener un derecho correlativo, la persona con derecho a un puesto en la asamblea municipal no podía ser excluída.

Pasando a los méritos nos encontramos con la sugestión de que el presente caso no puede ser distinguido del caso de *Torres,* 33 D.P.R. 349, *supra.* Literalmente no hay mucha diferencia, si la hay, en algunas de las palabras empleadas por la legislatura. En el *Caso Municipal* la asamblea debe nombrar ''a propuesta del organismo director local;'' para la Junta de Elecciones el Gobernador debe nombrar ''a propuesta de los organismos directivos centrales de dichos partidos.'' Las condiciones, sin embargo, que rodean los dos nombramientos son totalmente distintas.

El caso de *Torres* v. *Guánica* procedía a virtud de la teoría de que la entidad real con facultad para nombrar era el partido político interesado y que la facultad de la asamblea municipal era meramente secundaria o final. Haciendo un poco de historia de los nombramientos políticos dijimos que la legislatura tenía el derecho a dejar cubrir una vacante al partido político y así lo había hecho. Una idea que surgió fué también que la voluntad de un pueblo soberano al elegir representantes, de otro modo sería anulada.

Aunque una junta de elecciones es un organismo altamente importante, ha sido seleccionada en formas innumerables. En Puerto Rico es una junta permanente. No es elegida y la responsabilidad para su formación se ha dejado al Gobernador directamente por la legislatura e indirectamente por la Ley Orgánica.

''El poder ejecutivo supremo residirá en un funcionario ejecutivo, cuyo título oficial será 'El Gobernador de Puerto Rico.' '' ''Tendrá la inspección y control general de todos los departamentos y negociados del Gobierno de Puerto Rico.'' ''Expedirá credenciales, a todos los funcionarios para cuyo nombramiento esté autorizado.'' Estas son algunas de las disposiciones de la sección 12 de la Ley Orgánica.

Como se ha indicado en el caso que hemos estado analizando, el poder de nombramiento puede ser conferido por la Legislatura al Gobernador o en alguna otra parte, quizá con ciertas limitaciones que no se mencionan específicamente

en la Ley Orgánica. La consideración principal de esta opinión es que cuando la legislatura elige dejar la facultad de nombramiento al Gobernador, la autoridad así conferida cae dentro del poder de nombramiento del ejecutivo con los consiguientes privilegios y responsabilidades.

Aunque los hombres versados en la política dudan de la exactitud completa de la división *tripartite* de las facultades gubernamentales en el Gobierno Federal, los Estados y Territorios, sin embargo, para la mayor parte de los fines legales hay una línea clara que establece una división en cuanto a los poderes legislativo, ejecutivo y judicial. En el Gobernador está investida la facultad ejecutiva. Los nombramientos son histórica y normalmente aquella parte del poder ejecutivo en la cual puede ser usada la discreción. 38 C. J. 700. Mientras que la Legislatura puede poner limitaciones tanto al poder ejecutivo como al judicial, no puede anular o destruir uno u otro. Algo de la facultad original debe quedar. La facultad de nombramiento es fundamentalmente una de selección y discreción; por tanto, cuando la Legislatura, para formar una junta de elecciones invoca la facultad ejecutiva de nombramiento con su correspondiente discreción y responsabilidad, intenta las consecuencias ordinarias. Si el nombramiento que ha de hacerse no cae dentro de las facultades ejecutivas de nombramiento del Gobernador, no creemos que la legislatura pueda obligar al Gobernador a actuar en absoluto. Bajo su título de poder ejecutivo el Gobernador no puede ser requerido a hacer un nombramiento sin ejercitar su discreción.

Volviendo al caso de *Torres* es dudoso si al seleccionar los miembros para sus filas cuando la elección incumbe a la asamblea municipal, se está ejercitando la facultad ejecutiva de nombramiento.

El deber que incumbe al Gobernador, como dijimos en el caso de *Pagán* v. *Towner, supra,* es discrecional hasta cierto punto. Aunque la corte no debe tener el control de la selección particular que haya de hacerse, puede limitar

dicha selección a las filas del Partido Socialista y las personas por él recomendadas, suponiendo siempre que dicho partido ciertamente obtuvo el segundo puesto en número de votos en la última elección. Tal limitación tiene derecho a hacerla la legislatura. Otros casos podrían surgir en que el auto procedería pero el peticionario no se ha colocado dentro de ninguna excepción reconocida a la regla sentada por nosotros en el caso de *Pagán, supra,* de que el Gobernador no está obligado a nombrar a la única persona cuyo nombramiento se le someta.

Además, a pesar del hecho de que han sido presentadas a nosotros tres peticiones en los dos casos para el nombramiento de Bolívar Pagán, el peticionario ha dejado de decir las razones dadas por el Gobernador para rehusar nombrar a dicho Bolívar Pagán aunque la petición tendió a mostrar que las razones eran conocidas del peticionario. *Non constat* independientemente de las anteriores consideraciones, que las razones para no nombrar a Bolívar Pagán hubieran justificado la actuación del Gobernador. El peticionario dejó de presentar todos los hechos ante esta corte.

*El auto debe ser denegado.*

El Juez Asociado Sr. Franco Soto disintió.

OPINIÓN DISIDENTE DEL JUEZ ASOCIADO SR. FRANCO SOTO.

La opinión y sentencia última de la corte, de marzo 12, 1926, hace que deba insistir diciendo algo más de lo que con alguna amplitud expresé en mi voto disidente a la resolución de esta corte de febrero 3, 1926.

La cuestión envuelta es la misma, y no he podido encontrar en la nueva opinión del tribunal, emitida por el Hon. Juez Wolf, algo que me hiciera variar en mis conclusiones. Si así hubiera sido, lo habría expresado con el placer del que descubre su error, porque las injusticias que descansan en equivocaciones son las más desafortunadas.

La corte reconoce que por los términos en que está concebido el estatuto, este caso no puede diferenciarse del caso

de *Torres* v. *Asamblea Municipal de Guánica,* 33 D.P.R. 349, pero hace la salvedad que por las condiciones que lo rodean son totalmente distintos.   Una de las condiciones parece ser que el peticionario en el presente caso ''dejó de presentar todos los hechos ante esta corte.''   Me parecía haber tocado lo suficiente este punto en mi opinión anterior.   Añadiré ahora que en el caso de Torres, *supra,* p. 354, se declaró que el tribunal estaba satisfecho ''en vista de las citas del peticionario, de que en cuestiones de tan alta naturaleza pública un previo requerimiento para que se cumpla el acto en cuestión no es necesario.''   Y las autoridades de que entonces quedó satisfecha la corte, son las citadas por el abogado de *Torres* en su alegato y que dicen lo siguiente:

''Las autoridades no están en armonía sobre la cuestión de cuándo es necesario un requerimiento como condición precedente a la concesión del auto.   Es indudablemente la regla general si no invariable que en los casos en los cuales sólo están envueltos intereses privados, debe hacerse y alegarse un requerimiento.   Hay una distinción, sin embargo, entre casos que envuelven un mero derecho privado a que se cumpla un deber y aquellos en los cuales los intereses públicos generalmente son afectados, y en los que un ciudadano tiene el mismo interés en el cumplimiento de un deber público como otro.   Cuando no están envueltos tales intereses generales y solamente son afectados meros derechos privados, el relator debe, en un procedimiento de *mandamus,* alegar y probar el requerimiento y la negativa por parte de la persona o personas a quienes se trata de obligar a actuar por medio del auto; pero cuando el deber es estrictamente de naturaleza pública, como cuando incumbe a un funcionario público y no es un deber especial que afecta peculiarmente al relator, no hay nadie especialmente facultado para exigir su cumplimiento ni tampoco necesidad alguna para un requerimiento y una negativa.   En tal caso la ley que impone el deber es un requerimiento que continúa y el abandono en su cumplimiento una negativa que también continúa.   State vs. County Judge of Marshall, 7 Ia. 186; Chumersero v. Potts, 2 Mont. 242; Commonwealth v. Comm'rs of Alleghany, 37 Pa. St. 237; State v. Bailey, 7 Ia. 390; People v. Kipley, 49 N. E. 229; 171 Ill. 44; Attorney General v. Boston, 123 Mass. 460; State v. Board of Finance, 38 N.J.L. 259; State v. Jacksonville, 22 Fla. 21.''   2 Spelling, págs. 1191–92.

"Según el mejor criterio cuando el deber que se trata de hacer cumplir es uno que se tiene con el público en general, no es necesario ningún requerimiento para su· cumplimiento para que el demandado esté faltando como requisito previo a la solicitud de *mandamus* para compeler el cumplimiento del deber; en tales casos la ley misma está en lugar de un requerimiento y la omisión en cumplir el deber requerido en vez de una negativa. People v. Kipley, 171 Ill. 44, 49 N.E. 229, 41 L.R.A. 775; State v. Spokane St. R. Co., 19 Wash. 518, 53 Pac. 719, 67 A.S.R. 739, 41 L.R.A. 515." 18 R.C.L. p. 123.

Sería nimio negar el alto carácter o trascendencia pública de la cuestión que debatimos. ¿Cómo, pues, ser consistentes en este caso para insistir tanto en las razones o hechos que parece obligarse al peticionario a consignar en su petición, explicando la negativa del demandado? Y si ésta, sin embargo, ha sido alegada, explicándose que no se han aducido razones y más bien se muestra la ˙actitud pasiva y de reserva del demandado, ¿cómo exigir todavía que se expongan todos los hechos o motivos, si sólo pór el demandado son conocidos? Esta es la condición impracticable que se intenta imponer al peticionario, pues únicamente disponiendo de una fuerza psíquica extraordinaria o telepática es como tal vez podía sorprenderse las reservas mentales del demandado.

El caso de *Torres, ante,* se fundó en principios de aplicación general. No se rectifica, por ejemplo, que "un deber ministerial legal puede existir aunque la persona a quien se trate de obligar mediante *mandamus* tenga que interpretar una ley o examinar a un propuesto miembro para ver si reune las condiciones legales." 33 D.P.R. 353. Se llegó también a la conclusión de que la Legislatura de Puerto Rico tenía derecho a dejar que se cubra una vacante por los organismos políticos y el pensamiento de esta corte se eleva a consideraciones de mayor amplitud en sentido de que por la Constitución de los Estados Unidos la facultad de nombramiento puede dejarse por el Congreso· al Presidente o a los jefes de departamentos sin dudar que el Congreso˙ tiene

el derecho de fijar tal facultad de nombramiento en alguna
otra parte, y así asociando ideas, la corte declara que la his-
toria de los Estados Unidos ha demostrado que los partidos
políticos están reconocidos para varios fines como entidades
legales.   33 D.P.R. 352.   Munro, en su tratado sobre el Go-
bierno de los Estados Unidos, dice lo siguiente:

"Sea cual fuere la teoría de la Constitución, las organizaciones
de partidos en realidad se han convertido en los grandes factores de-
terminantes de la política en el gobierno americano.

"Las organizaciones americanas de partidos se han desenvuelto
de los principios rudimentarios pero son ahora las instituciones más
acabadas y eficientes de su clase en cualquier país.   Págs. 330, 341.

A pesar de todo, es difícil comprender que fuera necesa-
rio haber ido tan lejos en teoría para que luego, en la prác-
tica, el poder ministerial de nombramiento, a propuesta de
los organismos políticos dominantes, se limite solamente a
hacer obedecer ciegamente a simples asambleístas munici-
pales.   Me resisto a pensar, sin embargo, si mi noción de
la justicia es exacta, que sus reglas puedan ser de tal modo
elásticas que dependa su virtualidad de las condiciones más
o menos jerárquicas de un demandado.

Yo admito que el demandado en este caso tiene discre-
ción al ejercer su poder ministerial de nombrar y aunque
no hay discrepancia en que la discreción tiene su límite, mi
punto de vista es que ella no puede tener más limitación
que la que podían haber ejercido las asambleas municipales
al cubrir las vacantes ocurridas en su propio organismo.   Se
resuelve nuevamente, sin embargo, que la autoridad de nom-
brar conferida al Gobernador cae dentro del poder de nom-
bramiento del ejecutivo con los consiguientes privilegios y
responsabilidades y que tal facultad es de selección y discre-
ción.   Esto es correcto en cuanto a los nombramientos que
por nuestra constitución orgánica (Acta Jones) ha quedado
investido originalmente el Gobernador para hacerlos, pero
con excepción de tales nombramientos que se especifican en
el Acta Orgánica, no existe en la misma, cláusula alguna

general que disponga que cuando exista una vacante en cualquier cargo público, el Gobernador nombrará la persona para cubrir la vacante. El Congreso nos dió un gobierno representativo con los tres poderes históricos coordinados y no privó a nuestra Legislatura del poder de autorizar a otros de hacer nombramientos o el derecho de delegar por medio del estatuto a algún otro la facultad ministerial de nombramiento. La Legislatura puertorriqueña hizo uso de su autoridad al decretar la ley de elecciones y en su sección 1ª lo que prácticamente dice al Gobernador es: Nosotros hemos dispuesto lo necesario para la creación, como lo hemos hecho, de una Junta Insular de Elecciones y deseamos que sean nombradas las personas que en la forma propuesta han de ocupar los puestos. ¿Quiere usted nombrarlos por nosotros y hacerlo de modo que se cumpla nuestra intención expresa de garantizar una junta no partidarista?

Esta manera de ejercer la Legislatura su autoridad, que la tiene por el Acta Orgánica, no es una invasión del poder ejecutivo. Si el poder legislativo local no pudiera determinar las condiciones en que debe llenarse un cargo o los requisitos que debe reunir la persona elegible y las sugestiones que deben prevalecer en virtud del reconocimiento que se ha dado a los partidos políticos principales para que tenga efecto tangible el propósito que tuvo el legislador, había que decir entonces que la Legislatura no tenía ningún poder constitucional para decretar la sección 1ª de la Ley Electoral en los términos que fué redactada. Sin embargo, el precepto no es una innovación en la historia del gobierno de los Estados. El requisito del credo político del elegible y la propuesta o selección por los partidos dominantes es la regla estatutoria en muchos Estados y no la excepción. La ley interpretada en el caso de *Torres* es un ejemplo de la regla general. El caso reportado en 61 S. W. 218 es otro ejemplo práctico de cómo el Gobernador tuvo que seguir la propuesta de cierta organización para la composición de cierta junta examinadora.

Dada la teoría general de este caso y admitido, por otra parte, por todos que el demandado tiene solamente cierta discreción al ejercer su poder delegado de nombrar, no he podido ser convencido que sea justo negar de plano el *mandamus* sin expedir, por lo menos, el auto alternativo dando así una oportunidad para conocer hasta dónde puede alcanzar tal discreción.