Roberto H. Todd, como nominado de Republicanos Puros de
Puerto Rico para Comisionado Residente a los Estados
Unidos, peticionario, v. Eduardo J. Saldaña, como Secre-
tario Ejecutivo de Puerto Rico, demandado.

No. 223.—*Visto:* Julio 30, 1924. *Resuelto:* Agosto 2, 1924.

Mandamus—Cuestiones Sujetas a Mandamus y Propósitos del Remedio—Ac-
tos y Procedimientos de Funcionarios Públicos, Juntas y Municipalida-
des—Cuestiones Electorales—Envío de Nombres de Candidatos Nomina-
dos a la Junta Insular de Elecciones.—En contestación a una petición de
*mandamus* se alegó la existencia de dos candidaturas para un cargo y que se
seguiría el curso marcado en la ley para tales casos; el peticionario puso en
tela de juicio la aplicabilidad de la ley alegada. *Se resolvió:* que no estando
el Supremo en condiciones de resolver categóricamente que dicha ley no era
aplicable, se anulaba la orden expedida y se declaraba sin lugar la petición
sin perjuicio del derecho del peticionario a acudir nuevamente a los tribunales.

Petición de *mandamus* solicitando se librara orden contra el deman-
dado para que expusiera las razones que tuviera para que no se
expidiera auto de *mandamus* ordenándole recibir la nominación
del peticionario y el envío de ésta a la Junta Insular de Elec-
ciones. *Sin lugar.*

*Willis Sweet, R. H. Todd y R. Martínez Nadal,* abogados del peti-
cionario; *Hon. Attorney General, Miguel A. Muñoz, A. Fernán-
dez Diez y Carlos Llauger,* abogados del demandado.

#### · RESOLUCIÓN.

POR CUANTO, en contestación a la petición archivada en este caso, el Secretario Ejecutivo ha alegado el hecho de la existencia de dos candidaturas para el mismo cargo por el mismo partido y ha manifestado que seguirá el curso marcado por la sección 36 de la Ley Electoral;

POR CUANTO, el peticionario puso en tela de juicio la aplicabilidad de tal precepto, y

POR CUANTO, la corte, en el tiempo de que ha podido disponer para considerar la cuestión, no está preparada, bajo los hechos y la jurisprudencia que han estado a su alcance, para resolver categóricamente que dicha ley no es aplicable;

POR TANTO, *se anula la orden expedida y se declara sin lugar* la petición sin perjuicio del derecho del peticionario a acudir nuevamente a las cortes según sea aconsejado.

El Juez Asociado Sr. Aldrey firmó conforme con la resolución, pero no con sus fundamentos.

El Juez Asociado Sr. Franco Soto disintió.

OPINIÓN CONCURRENTE DEL JUEZ ASOCIADO SR. ALDREY.

Don Roberto H. Todd presentó en este tribunal el día 19 de julio último una petición de *mandamus* contra don Eduardo J. Saldaña, Secretario Ejecutivo de Puerto Rico alegando en lo substancial que el día 11 del mismo mes presentó al Sr. Saldaña un certificado creditivo de que ha sido nominado candidato por convención celebrada los días 28 y 29 de junio del mes anterior por el Partido Republicano Puertorriqueño para Comisionado Residente en los Estados Unidos para la elección general que habrá de tener lugar en esta isla el próximo mes de noviembre, certificado que está suscrito por Manuel F. Rossy y por Fernando Géigel ante un notario ante quien reconocen solamente las certezas de sus firmas, y solicitó que se librara una orden contra dicho Sr. Saldaña para que expusiera las razones que tuviera para que no se expidiera un auto de *mandamus* contra él ordenándole que recibiera la nominación del Sr. Todd y la envíe a

la Junta Insular de Elecciones con instrucciones de ser colocada en la papeleta electoral para las elecciones como la candidatura del Partido Republicano de Puerto Rico con el emblema de dicho partido, el águila.

Este tribunal libró la orden solicitada de la que disentí porque no alegándose en esa petición que el Secretario Ejecutivo, Sr. Saldaña, se hubiese negado a recibir la candidatura del Sr. Todd, no procedía tomar acción alguna contra él para obligarle a realizar un acto que no se alega que él se está negando a ejecutar, y porque si bien se decía en la solicitud que el peticionario tenía informes de que el Sr. Saldaña se negaría a recibir esa candidatura, estimé que esto no es suficiente para autorizar el procedimiento de *mandamus* por no alegarse expresamente que el demandado se niega a realizar acto alguno que por la ley tenga obligación de ejecutar sin que los pocos días transcurridos entre la presentación de la candidatura y la petición de *mandamus* sean por sí mismos demostración inequívoca de una negativa del secretario.

El día señalado por el tribunal compareció el Sr. Saldaña al solo efecto de impugnar la jurisdicción de este tribunal porque no había sido citado personalmente y presentó una declaración suya suscrita y jurada según la cual a él no le fué presentada la candidatura del Sr. Todd, como se alega en la petición, ni se ha negado a recibirla, pues en las fechas que se expresan en la solicitud de *mandamus* él estaba ausente en los Estados Unidos disfrutando de vacaciones que terminarían a fines del mes de julio, a cuyo vencimiento se encargaría nuevamente de su oficina.

El tribunal anuló la orden expedida contra Saldaña y días después, el 29 de julio, se presentó otra petición enmendada de *mandamus* por el Sr. Todd y se ordenó por este tribunal que al día siguiente compareciera el Sr. Saldaña a exponer las razones que tuviera para no recibir y archivar la nominación del peticionario como candidato de una convención del Partido Republicano Puertorriqueño para Comi-

sionado Residente en los Estados Unidos y para no enviar esa candidatura a la Junta Insular de Elecciones con instrucciones de colocarla en el debido sitio en la papeleta electoral como la candidatura del Partido Republicano Puertorriqueño con el emblema del mismo, el águila.

Nuevamente compareció el Sr. Saldaña ante nosotros y presentó una declaración jurada en la que expone que hace suyas todas las actuaciones del Secretario Ejecutivo Interino de Puerto Rico Sr. Herrero, en relación con la cuestión que se ventila, y alega que de dichas actuaciones se desprende que el certificado de nominación del Sr. Roberto H. Todd para Comisionado Residente en los Estados Unidos fué recibido en la Secretaría Ejecutiva de Puerto Rico en la fecha de su presentación, que dicho certificado consta actualmente en los archivos de dicha secretaría y forma parte de la documentación oficial de la misma, y que estos hechos aparecen expuestos bajo juramento por el compareciente en el *affidavit* que acompaña y que hace parte de su comparecencia. También alegó contestando al otro particular del requerimiento que de acuerdo con el artículo 41 de la ley número 79 para establecer la ley de inscripciones y elecciones de 1919, según fué enmendada en julio 30 de 1923 (p. 587), no ha existido ni existe en la actualidad obligación o deber algunos de parte del demandado de enviar a la Junta Insular de Elecciones el nombre de ningún candidato cuya nominación se haya radicado en la oficina del Secretario Ejecutivo de Puerto Rico para ser electo en las elecciones que han de celebrarse el día 4 de noviembre de este año; y que dicha obligación no existirá hasta el día primero de octubre de 1924, en cuya fecha el Secretario Ejecutivo tiene el deber de enviar todos los candidatos en el mismo día, por medio de listas certificadas, y que no tiene el demandado obligación alguna impuesta por la ley de remitir a la Junta Insular de Elecciones separadamente el nombre de candidato alguno para ningún puesto a ser cubierto por el voto popular en las próximas elecciones. También alegó el demandado

como fundamento que impide en absoluto la expedición del auto de *mandamus* en el presente caso que en la tarde del día 29 de julio último se le entregó personalmente un certificado de nominación suscrito por José Tous Soto y Eugenio Lecompte, como presidente y secretario, respectivamente, de una convención celebrada por el Partido Republicano Puertorriqueño en la ciudad de San Juan el día 25 del mes de julio, por el cual se nomina como candidato de dicho partido para el cargo de Comisionado Residente de los Estados Unidos al Hon. Félix Córdova Dávila; que dicho certificado de nominación, al igual que el certificado presentado a nombre del señor Todd, ha sido también recibido en la Secretaría Ejecutiva de Puerto Rico y consta en los archivos de la misma formando parte de la documentación oficial de dicha secretaría, que estos hechos aparecen expresados bajo juramento en el *affidavit* que acompaña y que se hace parte de la comparecencia, y que toda vez que el certificado de nominación presentado a nombre del señor Todd ha sido hecho a nombre del Partido Republicano Puertorriqueño, según aparece del certificado que acompaña, y que el certificado de nominación hecho a nombre y a favor del Hon. Félix Córdova Dávila aparece también hecho a nombre del Partido Republicano Puertorriqueño, o sea, el mismo partido que se alega nominó al peticionario en este caso, las actuaciones del Secretario Ejecutivo de Puerto Rico están expresa y textualmente demarcadas en la sección 36 de la Ley Electoral de Puerto Rico, y que de acuerdo con el párrafo segundo de la misma las funciones del demandado bajo las actuales circunstancias, después que son radicados estos dos certificados de nominación, se limitan a dar aviso de este hecho al comité central del partido a nombre del cual se han presentado esos dos certificados de nominación, y que la facultad de determinar cuál de esos certificados de nominación representa la candidatura oficial de dicho partido ha sido expresamente conferida por dicha sección 36 al citado comité central. También alegó el demandado que habiéndose

presentado en su oficina el día anterior el certificado de nominación del señor Félix Córdova Dávila no ha tenido tiempo material para dar cumplimiento a lo que expresamente le ordena la ley que haga en estas circunstancias pero que a la mayor brevedad posible se propone cumplir estrictamente con lo dispuesto en el estatuto.

A esa contestación se hicieron parte de ella varias declaraciones suscritas y juradas que comprueban los hechos alegados, entre ellos que la nominación del Sr. Todd ha sido recibida en la Secretaría Ejecutiva de Puerto Rico y está entre los documentos de su archivo; que se acusó recibo al señor Todd de su candidatura; que el 14 de julio último don José Tous Soto, como presidente del Partido Republicano Puertorriqueño, entregó en la misma oficina una declaración escrita y jurada, en la que consigna que dicho Partido Republicano Puertorriqueño no ha celebrado convención alguna hasta esa fecha para elegir candidatos para las elecciones de este año; y que el 21 de julio el Secretario Ejecutivo solicitó por escrito del Sr. Todd le pruebe que la convención que lo eligió fué convocada debidamente. Ninguno de los hechos expuestos en esas declaraciones juradas ha sido negado por el peticionario.

Dispone la sección 36 de la Ley Electoral, según quedó enmendada el 30 de junio de 1923, que cualquier partido político que hubiere depositado más del 20 por ciento del voto total de la isla para Comisionado a Washington en las precedentes elecciones generales tendrá derecho a nombrar candidatos por medio de convenciones debidamente convocadas, que se celebrarán a más tardar el 5 de septiembre; y que el presidente y el secretario de las mismas certificarán al Secretario Ejecutivo, a más tardar a las doce del día 10 de septiembre los nombres de los candidatos designados por la convención.

En este caso el día 11 de julio último fué presentado al Secretario Ejecutivo de Puerto Rico Interino el certificado de nominación del peticionario, y como el Secretario propie-

tario demandado, Sr. Saldaña, alega bajo juramento que dicho certificado ha sido recibido en su oficina en la fecha de su presentación y que consta en sus archivos y forma parte de la documentación oficial de la misma, no procede librar un auto de *mandamus* para obligarle a hacer lo que él reconoce y acepta que ha hecho, o sea, recibir y archivar con los demás documentos oficiales de su oficina la petición del Sr. Todd, aceptación y archivo que aparece más claramente de la declaración jurada que acompañó con su contestación, por lo que en vista de esos hechos aceptados por el actual secretario demandado no tenemos que decidir respecto a la conducta de su antecesor interino solicitando del Sr. Todd cierta comprobación de su designación.

La pretensión del peticionario de que el Secretario Ejecutivo envíe su nombre a la Junta Insular de Elecciones para ser impreso en la papeleta oficial como la candidatura del Partido Republicano Puertorriqueño para Comisionado en Washington es improcedente por ser contraria a la ley, pues ésta dispone en el artículo 41 que el Secretario Ejecutivo enviará el primero de octubre a la Junta Insular de Elecciones listas certificadas con los nombres de todos los candidatos presentados en su oficina, y cómo ese día no ha llegado no puede el peticionario exigir ni puede obligarse al demandado que envíe el nombre del peticionario como tal candidato a dicha Junta Insular de Elecciones y, además, porque el secretario no tiene obligación de enviar a la junta separadamente los nombres de los candidatos según se le vayan presentando sino que es el día primero de octubre que deberá enviar listas de todos los candidatos.

La petición de *mandamus* es también improcedente porque dispone la ley en el párrafo segundo del artículo 36 citado que ningún partido político presentará más de una candidatura para cada cargo, y pudiendo presentarse los certificados de candidaturas hasta el día 10 de septiembre, hasta esta fecha no puede saber el secretario si la candidatura que se le ha presentado es la que habrá de certificar el día pri-

mero de octubre a la Junta Insular de Elecciones para que figure en la papeleta electoral, pues preveyendo nuestra ley en el párrafo segundo del artículo 36 citado que pueda presentarse más de una candidatura como las candidaturas acordadas por dos o más convenciones del mismo partido, como ocurre en este caso en que se han presentado dos candidatos para Comisionado Residente en los Estados Unidos como las del Partido Republicano Puertorriqueño, ha dispuesto para casos como el presente que el Secretario Ejecutivo dé aviso del hecho al comité central de dicho partido, el cual estará facultado para determinar cuál es la candidatura oficial de aquél, cuya decisión deberá ser presentada al Secretario Ejecutivo antes de las doce del día 20 de septiembre, debiendo dicho secretario regirse por dicha decisión a menos que en 30 de septiembre, o antes, un tribunal de justicia ordenare lo contrario; y en caso de que el comité central del partido dejare de presentar su decisión antes de las doce del día 20 de septiembre, se considerará como candidatura oficial del partido la presentada en primer término al Secretario Ejecutivo y todas las demás candidaturas del mismo partido para el mismo cargo serán consideradas nulas y sin valor.

Puesto que nuestra ley prohibe que haya más de una candidatura por cada partido político y puesto que ha previsto el caso de que se presenten dos o más candidaturas como las de un mismo partido, y ha establecido claramente lo que ha de hacerse en tal caso, y puesto que el secretario afirma bajo juramento que está dispuesto a cumplir a la mayor brevedad con la ley y no se ha determinado cuál de las dos candidaturas presentadas es la oficial, no podemos ordenar al Secretario Ejecutivo que considere la del peticionario como la candidatura oficial que ha de figurar en la papeleta electoral. Eso es lo que dispone el estatuto y nosotros no somos legisladores para alterarlo disponiendo una cosa contraria o distinta a la establecida en él.

Es cierto que la Corte Suprema de Nebraska, en el caso

de *Phelps* v. *Piper,* 48 Neb. 724, y la de Michigan en el de *Stephenson* v. *Board of Election,* 118 Mich. 396, han resuelto que en caso de dos candidaturas de un mismo partido ambas deben figurar en la papeleta electoral, pero esas resoluciones no son aplicables al caso que estamos considerando porque ambas descansan en la base de que la legislatura de aquellos estados no ha previsto lo que ha de hacerse en tal situación, y al efecto en el primero de esos casos se dice terminantemente que "La legislatura no ha dispuesto medio alguno para la determinación de tales controversias;" y en la segunda resolución se dice "Aquí tenemos que considerar las dos convenciones, cada una alega tener el derecho de representar al mismo partido político. La propia ley será examinada en vano en busca de un precepto que trate tal contingencia. No fué tenida en cuenta por la legislatura y por tanto nada se legisló sobre el particular. No debe ser cosa que cause sorpresa que la ley, como fué aprobada originalmente, no sea perfecta en todos sus particulares."

Nuestra legislatura ha previsto el caso que no tuvieron en cuenta esos dos Estados y por consiguiente el secretario tiene que seguir los trámites dispuestos por ella y está dispuesto a cumplirlos.

Por las razones expuestas no debe librarse el auto de *mandamus* que se solicita y estoy conforme con la resolución del tribunal solamente en cuanto niega la expedición del auto solicitado.

OPINIÓN DISIDENTE DEL JUEZ ASOCIADO SR. FRANCO SOTO.

Siento disentir del resultado a que han llegado los otros jueces en la resolución de este caso. La conclusión de la mayoría es la negación del *mandamus,* si bien es de advertir que no ha habido uniformidad en los motivos para adoptar la negativa. De todos modos esta acción no se ha resuelto sobre los méritos y existiendo elementos suficientes de la petición y documentos que se acompañan, así como de

la contestación del demandado, me parece que éste es el
error que se ha cometido. Yo dudo mucho que podamos
dejar de fallar un asunto porque no se ha demostrado ca-
tegóricamente la no aplicación de la ley. Me parece que es
cuestión que podemos resolver nosotros mismos por ser
quizá un deber que nos impone el artículo 7 del Código Civil.

Mi inconformidad consiste en que el artículo 36 de la
Ley de Inscripciones y Elecciones, según fué enmendado en
julio 30, 1923, no tiene aplicación a los hechos de este caso.
Y no existiendo estatuto en Puerto Rico que haya previsto
una situación como la presentada en este caso, no quedan
más medios que. los de acudir y aplicar los principios y la
jurisprudencia que, en casos semejantes, se han aplicado en
diversos Estados, como así pasamos a examinar y discutir.

En aquellos Estados en que el estatuto no le da juris-
dicción expresa a las cortes para intervenir y zanjar las di-
ferencias que surjan dentro de las organizaciones de los par-
tidos políticos, la cuestión se deja para que se dirima por
el voto del pueblo en las elecciones generales que han de
celebrarse.

"En algunas jurisdicciones, sin embargo, las cortes han rehusado
determinar cuál de las dos facciones rivales de convenciones repre-
senta el partido político y se sostiene que *cuando dos candidaturas
han sido hechas que los dos tickets deben ser colocados en la papeleta
oficial de votantes.*" *Stephenson* v. *Election Com'rs,* 118 Mich. 396,
76 N. W. 914; *Phelps* v. *Piper,* 48 Neb. 724, 67 N. W. 755; *State
v. Piper,* 50 Neb. 42, 69 N. W. 384. 21 Ann. Cases 298.

En otros Estados, por ejemplo, Montana, Wisconsin, Mas-
sachusetts, New York, etc., el estatuto da poder a las cortes
para determinar y juzgar las contiendas que ocurran dentro
de cada partido político, pero las autoridades varían en sen-
tido de si el fallo de un comité político puede o nó obligar
a las cortes sobre el conflicto o rivalidad de las facciones
que reclaman al mismo tiempo ser la legítima o regular re-
presentación del partido. Pero cualquiera que sean las va-
riaciones de las autoridades en estos Estados, si bien el ofi-

cial encargado de recibir y archivar las candidaturas tiene ciertas facultades para inquirir acerca de la regularidad de las candidaturas, no así ocurre lo mismo en los Estados primeramente citados y otros que siguen la misma pauta, en los cuales no existiendo estatuto que dé jurisdicción a las cortes para investigar la regularidad de convenciones rivales dentro del mismo partido político, el funcionario encargado de recibir y archivar las candidaturas no tiene en absoluto facultad discrecional o cuasi judicial para investigar la regularidad o nó de una convención política ni menos tratar de determinar cuál representa la legítima o genuina representación del partido. Su deber de recibir y archivar nominaciones es ministerial; su autoridad no alcanza para resolver cuál de los dos tickets debía ser colocado en la papeleta oficial y su función sólo se limita exclusivamente a que se corrijan irregularidades que se puedan desprender del certificado para asegurarse de la autenticidad del documento.

Y ya entrando en los méritos del caso, aparece de la contestación del Secretario Ejecutivo que la candidatura del peticionario Roberto H. Todd para Comisionado Residente en los Estados Unidos, nominado según el certificado en una convención del Partido Republicano Puertorriqueño el 29 de junio de 1924, fué presentada en la oficina del secretario el 11 de julio de 1924 con el fin de que se recibiera y archivara de acuerdo con la ley. La certificación *prima facie* llena todas las formalidades externas. Las firmas del presidente y secretario de la convención en que se afirma que tuvo lugar la nominación están autenticadas ante notario. Esta es una de las formalidades, por ejemplo, que dentro del deber ministerial que tiene el Secretario Ejecutivo puede investigar en caso que dichas firmas no hubieran sido reconocidas ante un funcionario depositario de la fe pública. También podía cerciorarse por sí mismo si de hecho se había verificado tal convención, pero nada más podía inquirir dicho oficial y mucho menos intentar investigar la regularidad o

irregularidad de la convención que nominó al peticionario.
De suerte que el Secretario Ejecutivo, inspirado, como así se
desprende de su contestación por el consejo legal del At-
torney General de Puerto Rico, exigiendo al peticionario
prueba *aliunde* que demostrase la regularidad de la conven-
ción, se excedió en sus facultades y fué una manera indi-
recta de negarse a recibir y archivar en su oficina dicha can-
didatura, cuando su deber era, una vez que no existían in-
formalidades que corregir, de recibirla y archivarla para que
fuera enviada en su oportunidad a la Junta Insular de Elec-
ciones para ser impresa en el sitio correspondiente en la
papeleta oficial de votantes, sin parar mientes en la legiti-
midad del partido que represente.

Si días después de recibida la candidatura del peticiona-
rio el Secretario Ejecutivo recibe una certificación suscrita
por José Tous Soto y Eugenio Lecompte, en su carácter de
presidente y secretario del mismo Partido Republicano, con-
signándose que en la fecha a que se refiere la nominación del
peticionario no se había celebrado convención alguna que
nominara el candidato de Comisionado Residente en los Es-
tados Unidos y más tarde recibió un certificado suscrito por
las personas antes nombradas, como presidente y secretario,
respectivamente, de una convención celebrada por el Partido
Republicano Puertorriqueño en la ciudad de San Juan el
día 25 de julio de 1924 por el cual se nomina, como candi-
dato de dicho partido para el cargo de Comisionado Resi-
dente en los Estados Unidos a Félix Córdova Dávila, todos
esos hechos corroboran, conforme se alega en la petición de
*mandamus* y resulta de los *affidavits* que se acompañan, que
el Partido Republicano Puertorriqueño se dividió en dos ban-
dos; que se trata de una verdadera escisión en la masa del
partido y que no es cuestión de meras disenciones locales o
diferencias en organismos inferiores del partido, que es lo
que única y realmente quiso prever la ley de inscripciones y
elecciones en su art. 36, tal como fué enmendado en julio 29,
1923. Esta disposición de la ley es, pues, solamente aplica-

ble a disensiones como las que pueden resultar en la nominación de candidatos locales como las que surgen en las candidaturas para tickets municipales, representantes de distrito, distritos senatoriales, etc., y las que materialmente pueden ser dirimidas por un comité central, tal como dispone el artículo 36; pero tratándose de la división o dislocación de un partido en lo que pudiera llamarse en su eje central, no cabe bajo ningún razonamiento sostener que existe una cuestión parcial que dirimir sino una magna contienda que afecta a la pureza y a la vida misma del partido que se divide en dos alas. En vano puede buscarse un precepto en la Ley Electoral vigente que trate tal contingencia y es porque clama a la razón que la Legislatura Portorriqueña no tuvo en contemplación sucesos que han ocurrido después. El mismo artículo 36 no puede ser más claro en sus términos: en él se legisló para casos ordinarios pero no para hechos extraordinarios. No podemos forzar su interpretación so pena de excedernos en nuestras propias funciones como jueces para interpretar la ley. Y para mayor claridad es bueno que copiemos dicho artículo 36, que textualmente dice:

"Cualquier partido político que hubiere depositado más del veinte (20) por ciento del voto total de la Isla para Comisionado a Washington en las precedentes elecciones generales, tendrá derecho a nombrar candidatos por medio de convenciones debidamente convocadas. Dichas convenciones se celebrarán a más tardar el cinco de septiembre y el presidente y el secretario de las mismas certificarán al Secretario Ejecutivo, a más tardar a las doce del día del diez de septiembre los nombres de los candidatos designados por la convención. Si cualquiera de los partidos dejare de presentar al Secretario Ejecutivo, el diez de septiembre a las doce del día, o antes, el nombre de algún candidato para algún cargo, entonces el partido que así faltare, perderá el derecho a la presentación de candidatos para tal cargo o cargos.

"Ningún partido político presentará más de una candidatura para cada cargo. Si se presentare para su inscripción más de una candidatura como las candidaturas acordadas por dos o más convenciones del mismo partido, el Secretario Ejecutivo dará aviso del hecho al comité central de dicho partido, el cual estará facultado

para determinar cuál es la candidatura oficial de aquél. La decisión
de dicho comité central deberá presentarse al Secretario Ejecutivo
antes de las doce del día del veinte de septiembre. El Secretario
Ejecutivo deberá regirse por dicha decisión a menos que en treinta
de septiembre, o antes, un tribunal de justicia ordenare lo contrario.
·En caso de que el comité central del partido interesado dejare de
presentar su decisión antes de las doce del día del veinte de septiem-
bre, se considerará como candidatura oficial de dicho partido la
candidatura presentada en primer término al Secretario Ejecutivo
y todas las demás candidaturas del mismo partido para el mismo
cargo serán consideradas nulas y sin valor.''

No podemos, pues, hacer uso de esta disposición de la
ley y no existiendo por consiguiente ningún precepto en
nuestra ley para una condición tal como aparece de los au-
tos, o no existiendo estatuto que confronte una situación
igual a la presente, tenemos que acudir necesariamente al
medio más en armonía que resulta en consonancia con las
prácticas democráticas que rigen en un gobierno libre en
donde su fuerza y poder nace de la voluntad del pueblo.
Este es el principio en que descansa la abrumadora juris-
prudencia de todos aquellos Estados donde se ha resuelto
que las candidaturas rivales se imprimirán en la papeleta
electoral para que el pueblo sea el que decida.

Uno de los casos que ilustran mejor esta materia y en el
que el lenguaje de la Corte Suprema de Nebraska es real-
mente sugestivo, es el de *Phelps* v. *Piper,* 48 Neb. 724. En
este caso en parte se dice:

''La legislatura no ha dispuesto medio alguno para la determi-
nación de tales controversias. Los partidos políticos son asociacio-
nes voluntarias constituídas para fines políticos. Ellos establecen
sus propias reglas, y se gobiernan de acuerdo con sus propios prece-
dentes. Los electores pueden formarlos, reorganizarlos, y disolver-
los a voluntad. Los electores son los llamados a determinar final-
mente todas las cuestiones de esa índole. Los electores que consti-
tuyen un partido son ciertamente el único núcleo que puede final-
mente dictaminar entre facciones u organizaciones contendientes.
La cuestión es esencialmente política y no judicial, por su naturaleza.
Sería igualmente peligroso para la independencia de las elecciones,

la libertad de los votantes y la dignidad y respeto que deben mante-
nerse respecto a los tribunales, que las cortes intentaran en algún
caso investigar el gobierno, usos o doctrinas de los partidos políticos
y excluir de las papeletas oficiales los nombres de candidatos nomi-
nados por una organización que una parte, o quizás una inmensa
mayoría, de los electores afiliados al partido de que se trata, cree
ser la que representa sus doctrinas políticas y el gobierno del par-
tido.   Aún dudamos que la legislatura tenga poder para conferir a
las cortes tal autoridad.   Es indudable, sin embargo, que la legis-
latura no ha tratado de hacerlo.   No nos extenderemos en conside-
raciones sobre el criterio que hemos expuesto.   Si fuera necesario ci-
tar autoridades en apoyo del mismo, creemos que los principios fun-
damentales son aquellos que guiaron a las cortes en los casos de
People v. District Court, 18 Colo. 26, 31 Pac. 339; Shields v. Jacob,
88 Mich. 164, 50 N. W. 105; así como también en State v. Allen,
*supra.''*

Otro caso de excepcional importancia es el de *Stephenson*
v. *Board of Election Com'rs.,* 118 Mich. 396, confirmando
prácticamente los principios políticos sustentados en los ca-
sos anteriores.   Y en él se dice:

''Se ha resuelto en este Estado que cuando facciones rivales de
una convención regularmente convocada de un partido nominan y
certifican diferentes tickets, los comisionados de elección no tienen
ninguna autoridad para aceptar una, con exclusión de la otra; y
se resolvió además que bajo tales circunstancias, ambos tickets de-
bían de ser impresos en las papeletas; y se dijo en relación con
esto que el nombre de un partido como había sido certificado debía
ponerse sobre el ticket sin más adición o designación distintiva que
la que aparecía en los certificados entregados.   Véase el caso de
Shields v. Jacob, 88 Mich. 164, 50 N. W. 105.   Ese caso surgió bajo
la ley núm. 190, Pub. Acts 1891, la cual disponía respecto a lo que
generalmente se conoce por 'Papeleta Australiana,' que exige la
adopción de una viñeta por cada partido, bajo la cual el ticket del
partido debía ser impreso.

''Una cuestión semejante surgió en Colorado el año próximo pa-
sado bajo una ley de índole semejante que prescribía que el funcio-
nario a quien se entregaba el certificado debía resolver al formulár-
sele las oportunas objeciones.   En una convención convocada regu-
larmente surgió un desacuerdo, que dió por resultado una división

y dos tickets; cada facción alegaba representar al partido, y cada una archivaba el certificado prescrito por el estatuto. Se alegó que el secretario de estado tenía autoridad para resolver cuál de los dos tickets debía ser colocado en la papeleta pero la corte resolvió lo contrario. Se dijo que su facultad sólo alcanzaba al hecho de corregir informalidades. La corte se expresó así: 'Respecto a cuáles eran los deberes del secretario de estado bajo las circunstancias de este caso, es cosa que todavía está por resolverse. Aquí tenemos que considerar las dos convenciones, cada una alega tener el derecho de representar al mismo partido político. La propia ley será examinada en vano en busca de un precepto que trate de tal contingencia. No fué tenido en cuenta por la legislatura y por tanto nada se legisló sobre el particular. * * * ' ''

En este caso se hace referencia a algunos Estados que contienen estatutos dando jurisdicción a las cortes para determinar las diferencias de facciones rivales y determinar cuál pueda tener la genuina representación del partido y en él se llama especialmente la atención del Estado de New York en donde una facción política rebelde triunfó sobre los derechos judicialmente determinados por la corte en favor de la otra facción y comentando el caso de New York, se dice en la opinión:

"Así, pues, se verá que la política de Mongin triunfó sobre los derechos judicialmente determinados de Patterson. No puede encontrarse en la historia de la jurisprudencia de este país un capítulo más humillante y todo se debe a la tentativa mal dirigida de imponer a la corte el deber de presidir convenciones políticas y asambleas por los medios y acciones o procedimientos de la ley, impropios para el objeto. * * * ''

No podemos estar conformes que se pueda afirmar para darle cierta aplicación al artículo 36, *supra,* que en la petición no se alega que no exista un comité central del Partido Republicano Puertorriqueño. Si se alega que en una convención celebrada el 3 de mayo de 1924 dicho partido acordó coaligarse al partido Unión de Puerto Rico y una parte de los delegados se retiraron y alegan que constituyen el ver-

dadero Partido Republicano Puertorriqueño, es obvio decir que no pudo sobrevivir a la división del partido un comité central que pueda dirimir semejante disidencia. Sería contrario al buen sentido, a las reglas de enjuiciar y a la pura razón presentar la cuestión al comité central de cualquiera de las dos facciones rivales, porque el resultado sería que fallarían su propia causa. *Nemo debet esse judex in propia causa.*

Tal vez pudiera creerse que dos tickets llevaran cierta confusión al electorado y que eso pueda inducir mal al elector al marcar la papeleta. En relación con esta aparente dificultad, en el caso de *Stephenson* v. *Board of Election Com'rs supra,* se trata esta parte de la cuestión y el razonamiento de la corte es tan fuerte que nos parece que él destruye toda objeción. Dicha corte en ese extremo dice:

"Poca consideración debe darse al razonamiento de que pueden ser engañados los votantes teniendo dos tickets demócratas en la contienda. Una vez sin duda los votantes fueron frecuentemente inducidos a error por el hecho de existir nombres impresos bajo ciertos determinados encabezamientos que propiamente no pertenecían a ellos. Pero este engaño sólo se llevó a cabo en secreto y por la tardanza de la hora en la cual tales tickets irregulares fueron distribuídos, generalmente sólo el día de la elección. Pero bajo la ley actual, el peligro de engaño en la forma indicada queda reducido a su mínima expresión. El secretario de estado está en el deber de certificar estos tickets a los secretarios de condado, y los secretarios de condado deben a su vez hacer que los mismos se publiquen por varios días antes de la elección.  *   *   * "

En conclusión, si el Secretario Ejecutivo ha intentado y persiste seguir la vía que señala el artículo 36, su actuación es equivocada. Su deber, por las razones que han sido expuestas, es ministerial y soy de opinión que un *mandamus* de carácter perentorio debe ser expedido para que reciba y archive el certificado del peticionario dándole el curso ulterior que se expresa en esta opinión.