LUIS RODRÍGUEZ, BENITO SIERRA y CIRILO AVILÉS, peticionarios, *v.* EDUARDO J. SALDAÑA, en su carácter de Secretario Ejecutivo de Puerto Rico, demandado.

No. 9.—*Resuelto:* Junio 20, 1928.

*Bolívar Pagán,* abogado de los peticionarios.

EL JUEZ ASOCIADO SEÑOR HUTCHISON, emitió la opinión del tribunal.

Los párrafos 3°. y 4°. de la tercera tentativa que hacen los peticionarios para demostrar por qué este tribunal

debe conocer del procedimiento de *injunction* propuesto, leen como sigue:

"III. Que el 23 del corriente, mediante moción, los peticionarios insistieron en solicitar providencia exponiendo un nuevo motivo, que éstos estimaban y estiman suficiente, porque por similar motivo este Honorable Tribunal Supremo ha tomado jurisdicción original en numerosos casos citados y parecidos al presente.

"IV. Que el 24 del corriente este Honorable Tribunal Supremo, aceptando implícitamente los motivos expuestos por los peticionarios en la alegación XVI enmendada, dictó otra resolución declarando otra vez que no ha lugar al auto solicitado, exponiendo esta vez como fundamento el que este Tribunal carece de tiempo necesario para oír a las partes debido al acumulado trabajo pendiente y en vísperas de vacaciones, y exponiendo también este Tribunal que no se ha demostrado que este Tribunal Supremo tenga jurisdicción original en la materia planteada."

Nuestra resolución del 24 de mayo, de que ahora se quejan los promoventes, se copia *verbatim* al margen.[1]

---

[1] RESOLUCION—San Juan, Puerto Rico, mayo 24, 1928. Por cuanto el 22 del corriente este Tribunal dictó una resolución declarando sin lugar el auto de *injunction* solicitado, por no estimar suficientes los motivos expresados por los peticionarios en el párrafo XVI de la petición para haberse acudido originalmente ante este Tribunal, y sin prejuzgar la cuestión de si los peticionarios tienen o no un interés directo en las cuestiones planteadas bastante para justificar la expedición del mandamiento que se interesa;

Por cuanto los peticionarios, por medio de una propuesta enmienda del párrafo XVI de su petición, insisten en que este Tribunal provea lo necesario para la tramitación y discusión de las cuestiones planteadas en su fondo, en beneficio de la justicia, quedando redactado el referido párrafo XVI en su propuesta forma enmendada, como sigue:

"XVI.—Que dichos peticionarios acuden originalmente ante este Honorable Tribunal Supremo con el presente remedio por las razones siguientes:

"(a) Porque el demandado es un alto funcionario del Gobierno de Puerto Rico.

"(b) Porque de acudirse primeramente, en jurisdicción original, ante una corte de distrito para plantear las cuestiones envueltas en este recurso, el demandado, en caso de sentencia adversa, podría interponer apelación para ante este Tribunal Supremo, demorando de esta manera grandemente la sentencia final, evitando así la suspensión de la ley impugnada cuyos irreparables perjuicios desean evitar los peticionarios.

"(c) Que la propuesta ley de los señores Tous Soto y García Méndez, de ser ejecutada, constituye un grave perjuicio y peligro inminente para centenares de miles de ciudadanos obreros residentes en Puerto Rico que serían afectados, y por ello constituye este litigio un asunto de vital y trascendental interés público.

"(d) Que este litigio envuelve cuestión tan importante como la legalidad de sesiones de la Legislatura, y la interpretación de la vigente Ley Orgánica de Puerto Rico en cuanto a la limitación constitucional de los poderes y facultades de la Asamblea Legislativa."

Por cuanto los peticionarios ahora alegan que por idéntica razón a la ale-

La única razón adicional para invocar la jurisdicción original de esta Corte, aducida en el párrafo XVI de la petición según fué enmendada por medio de la moción anterior de los peticionarios, fué la indicación contenida en el inciso (d) de dicho párrafo, según quedó enmendado, al efecto de que la presente controversia envuelve cuestiones de tal magnitud como la de la legalidad de las sesiones legislativas y la interpretación de la Carta Orgánica en lo relativo a las limitaciones impuestas sobre los poderes de la Legislatura.

La única autoridad citada por los peticionarios en apoyo de este nuevo fundamento para dirigirse a la Corte Suprema en vez de la corte de distrito, era y es el caso de *Municipio de Quebradillas* v. *Secretario Ejecutivo*, 27 D.P.R. 147.

Al denegar la moción anterior, esta corte hizo distinción del caso de Quebradillas, indicando que el mismo envolvía no solamente las cuestiones señaladas por los peticionarios

gada en el inciso (a) de dicha alegación XVI, este Tribunal ha tomado jurisdicción original en infinidad de casos, especialmente en los siguientes, donde esta Corte afirmó su doctrina declarando que puede tomar jurisdicción original en asuntos donde el demandado sea un alto funcionario del Gobierno de Puerto Rico: Zavala v. Consejo Ejecutivo de Puerto Rico, 9 D.P.R. 211; Negrón, etc. v. El Superintendente de Elecciones, 11 D.P.R. 366; Lutz v. Post, 14 D.P.R. 860; Jiménez v. Reily, 30 D.P.R. 626; Pagán v. Towner, 35 D.P.R. 1; Partido Socialista v. Towner, 35 D.P.R. 187; Martínez Nadal *et al.* v. Saldaña, Secretario Ejecutivo de Puerto Rico, 33 D.P.R. 721; Todd v. Saldaña, Secretario Ejecutivo de Puerto Rico, 33 D.P.R. 704; y Martínez Nadal v. Saldaña, Secretario Ejecutivo de Puerto Rico, el cual está pendiente de sentencia ante esta Corte.

POR CUANTO los peticionarios ahora alegan además que la razón expuesta en el inciso (d) de la alegación XVI, por sí sola, sería suficiente para pedir la jurisdicción original de este Tribunal, a tenor de lo resuelto por esta Corte en el caso de Municipio de Quebradillas v. Secretario Ejecutivo, 27 D.P.R. 147.

POR CUANTO el caso últimamente mencionado que envolvía la determinación del derecho del veto fué presentado el 25 de marzo de 1918, habiendo sido resuelto el 11 de marzo de 1919, en una época en que no existía la situación anormal y difícil indicada en el caso de Farinacci v. The Niagara Fire Insurance Co., resuelto el 25 de abril de 1928.

POR CUANTO de los otros casos citados por los peticionarios, uno fué presentado ante uno de los jueces asociados de este Tribunal en funciones de turno durante el período de vacaciones, y los demás, o eran asuntos electorales de naturaleza urgente, debido al elemento de tiempo envuelto, o iban dirigidos contra el Jefe Ejecutivo de la Isla o contra el antiguo Consejo Ejecutivo.

POR CUANTO en uno de los casos más recientes de los citados por los peticionarios, o sea, el de Todd v. Saldaña, visto el 30 de julio de 1924, y resuelto en

en el presente recurso, sino también cuestiones referentes a ciertos poderes del Jefe Ejecutivo. En dicho caso se hizo hincapié sobre el elemento de tiempo para demostrar que no había necesidad de hacer una determinación rápida y final de la controversia. Se hizo además la distinción de que dicho caso fué resuelto hace más de diez años, bajo condiciones muy distintas a las hoy existentes. Tal vez pudo haberse hecho mención de la cuestión sobre nombramientos hechos durante el receso de la Legislatura, cuestión que estaba envuelta indirectamente y que fué discutida incidentalmente como un factor de mayor importancia práctica que el punto resuelto en relación con el *pocket veto*.

En la moción anterior, los promoventes citan otros casos, no como ahora alegan en apoyo de la razón adicional expuesta para invocar la intervención en primera instancia de esta corte, sino en relación con el primer fundamento expresado en el inciso (*a*) del párrafo XVI de la petición original y en el primer inciso de la enmienda propuesta, en que se exponen sin alteración o modificación alguna. Al resolver la moción anterior, se hizo una clara distinción de estos casos por fundamentos que no es necesario repetir aquí. La referencia que se hace en dicha resolución al caso de *Todd* v. *Saldaña*, 33 D.P.R. 704, y la situación peculiar con que se confrontaba este tribunal en aquel caso, simplemente se

---

agosto 2 del mismo año, momentos antes de entrar en el período de vacaciones, esta Corte por mayoría, y a pesar de la naturaleza de las cuestiones envueltas según se desprende de la opinión concurrente del Juez Asociado Sr. Aldrey y de la opinión disidente del Juez Asociado Sr. Franco Soto, se vió en la necesidad de confesar que en el tiempo de que había podido disponer para considerar la cuestión, no estaba preparada, bajo los hechos y la jurisprudencia que estuvieron a su alcance, para resolver la cuestión planteada.

POR CUANTO como consecuencia inevitable de las cuestiones subrayadas por los peticionarios en el inciso (*d*) del párrafo XVI, *supra,* y como resultado del tiempo necesario para oir a las partes, y para que quede en definitiva sometido el caso a la consideración de este Tribunal en vísperas del próximo período de vacaciones fijado por la ley, y dado el gran número de casos ya sometidos y no resueltos, así como la larga lista de casos ya señalados para vista o los pendientes de señalamiento, muchos de los cuales son de importancia y algunos de urgente resolución, es claro y evidente que no nos quedaría tiempo suficiente para el de-

hizo con el fin de poner de manifiesto lo poco sabio que sería asumir jurisdicción en un caso más o menos difícil y complicado que necesariamente sería sometido dentro de pocos días antes de comenzar el término de vacaciones ya fijado por la ley, y que no está sujeto a ser alterado a voluntad o conveniencia de este tribunal. El próximo párrafo de la resolución indica la imposibilidad práctica de decidir antes de noviembre las cuestiones que tratan de someter los peticionarios. El hecho de que otros muchos casos de igual o mayor importancia ya habían sido sometidos y están pendientes de resolución o señalados para vista, fué mencionado de paso por el valor que esa indicación pudiera tener para dar más peso a nuestra decisión.

Entonces, los peticionarios, en su moción anterior, dejaron de citar, en apoyo de cualquier fundamento nuevo o adicional para acudir a esta Corte Suprema en primer término, numerosos casos similares al presente en que este tribunal había ejercido jurisdicción original. En verdad, no fué la intención de esta corte, tácitamente o en alguna otra forma, aceptar como suficiente cualquiera de las razones aducidas por los promoventes en la propuesta enmienda del párrafo XVI de la petición, todas las cuales, excepto la última, que es el único fundamento adicional que se sugiere, habían sido

bido estudio y satisfactoria disposición de las cuestiones envueltas, antes del próximo mes de noviembre.

POR CUANTO no podemos asumir como asumen los peticionarios que la corte de distrito resolvería el caso en contra de ellos, si es que tienen razón, y, por otro lado, mucho menos podemos asumir que una vez resuelta la controversia en contra de los peticionarios por una corte de distrito, semejante decisión sería errónea, y en todo caso, aceptando única y exclusivamente para los fines de esta resolución, que las cuestiones envueltas son tan difíciles y complicadas e importantes como creen los peticionarios, entonces nos parece preferible que, si la petición es admisible, sean resueltas en primer término por la corte de distrito, dándonos así el beneficio de la opinión de su juez y de un estudio más profundo y acabado de la jurisprudencia aplicable, por parte de los letrados. Y

POR CUANTO, por último, el auto de *injunction* solicitado no es en ayuda de la jurisdicción de apelación de esta Corte Suprema y los peticionarios no han demostrado que esta Corte tenga jurisdicción original en la materia.

POR TANTO, no ha lugar a la providencia solicitada.

rechazadas definitivamente mediante nuestra resolución anterior, por ser inadecuadas. La segunda resolución, *supra*, no se basó en forma alguna en la carencia de tiempo para oír a los peticionarios, según ellos ahora alegan, sino más bien, incidental y parcialmente, en la imposibilidad práctica de llegar a una decisión final después de haber oído a todas las partes interesadas, antes de que el tribunal se declarase en receso.

Una de las razones, que es tal vez el motivo principal señalado en la solicitud original y recalcado en la moción posterior como fundamento para invocar la jurisdicción original de esta corte, es la demora a que estaría sujeta la determinación final de la contienda en caso de que el demandado apelara de una resolución favorable a los peticionarios. Una obvia respuesta a esta indicación sería el hecho prominente de que dentro de todas las probabilidades humanas, y debido a circunstancias sobre las cuales esta corte no tiene dominio alguno, muy poco o nada ganarían los peticionarios en lo que a tiempo se refiere si ejerciéramos la jurisdicción original propuesta por ellos.

Es bueno añadir con relación a este extremo que al resolver la moción anterior pasamos por alto el hecho de que la demora que prevén los peticionarios se basa en la hipótesis de que se dicte sentencia favorable a ellos y de que el demandado apele de la misma. Sin embargo, los promoventes no se quejan ahora de esta omisión, y una variación tan leve en el caso hipotético previsto no afecta la corrección de la conclusión a que ya se ha llegado. En nuestra resolución anterior rehusamos asumir, como se suponía que lo hicieron entonces los peticionarios, que la corte de distrito declararía constitucional una ley inconstitucional. Tampoco podemos asumir, como lo hacen los peticionarios, que la ley que ellos atacan es inconstitucional, ni que el demandado apelaría de la sentencia dictada por la corte de distrito resolviendo que tal ley es inconstitucional. De todos modos, el

elemento de tiempo envuelto y lo deseable de obtener el beneficio de una decisión anterior por parte de una corte de distrito sobre cuestiones de esta naturaleza, permanecen incólumes, y podríamos agregar que los promoventes no han indicado en momento alguno cómo el mero hecho de dejar de obtener una decisión final sobre la constitucionalidad de la ley en cuestión antes de la fecha en que se supone empezará a regir podría irrogar daños graves o irreparables a los peticionarios.

"Aunque las cortes de apelación generalmente están investidas de jurisdicción original en ciertos casos y tienen cierta jurisdicción auxiliar o incidental a sus poderes de apelación, la función principal de tales cortes es el ejercicio de revisión sobre los tribunales inferiores y sobre la comisión de errores por éstos.'' 15 C. J. 1025, párrafo 445.

Como punto de partida para una investigación ulterior, se llama la atención de los señores letrados al párrafo 112, página 1076 de 7 R.C.L., de donde, sin aprobar o desaprobar el texto, hacemos el siguiente extracto:

"Debe hacerse una distinción entre los recursos privilegiados de *mandamus, quo warranto, certiorari,* y otros similares, y los no privilegiados que se designan con esos mismos nombres; en otras palabras, entre autos que se expiden para fines privilegiados—es decir, generalmente para fines *publici juris*—y los que se expiden para proteger y hacer cumplir derechos meramente privados. A las cortes inferiores se les confiere autoridad para conocer de estos recursos como un incidente de su jurisdicción original general; a las cortes de apelación se les concede tal autoridad para darles jurisdicción. Los tribunales inferiores conocen de estos recursos con jurisdicción original ilimitada, ya que en los demás casos tienen jurisdicción original general. Las cortes de apelación no pueden tomar jurisdicción original en los demás casos, y la jurisdicción que estos recursos les confieren es esencialmente limitada. Las cortes inferiores conocen de estos recursos privilegiados como parte de su jurisdicción original, con autoridad de expedirlos en todo caso adecuado, mientras que un tribunal de apelación conoce de los recursos privilegiados mediante jurisdicción privilegiada, con la facultad de expedirlos únicamente en casos privilegiados adecuados. Cuando se

invoca la jurisdicción original de un tribunal de apelación, debe procederse mediante permiso de la misma corte, demostrándole *prima facie* que se trata de un caso adecuado para que la corte tome conocimiento de él.''

En la página 19, párrafo 1°., de 32 C. J., se dice que:

''El recurso de *injunction* no es de por sí un recurso privilegiado, sino que a veces se hace uso de él para fines privilegiados, como por ejemplo, cuando se instituye a nombre del soberano o del estado para hacer efectiva su jurisdicción para impedir monopolios o estorbos públicos, o para evitar el abuso de los poderes concedidos a empresas de monopolio.''

En una nota que aparece al pie del texto últimamente citado, hallamos la siguiente manifestación:

''(a) En Wisconsin, en virtud de una disposición constitucional, se ha resuelto que el injunction es un recurso quasi-privilegiado cuando surge una cuestión que hace que su uso sea adecuado. *State* v. *Milwaukee*, 102 Wis. 509, 78 N. W. 576; *State* v. *Cunningham*, 81 Wis. 440, 51 N. W. 724, 15 L.R.A. 561; *Atty. Gen.* v. *Eau Claire*, 37 Wis. 400; *Atty. Gen.* v. *Chicago, etc., R. Co.*, 35 Wis. 425.''

En ausencia de una disposición similar a la contenida en la constitución de Wisconsin, ya sea en la Carta Orgánica o en las leyes locales, confiriendo autoridad a este tribunal para conocer de los recursos de *injunction*, no necesitamos por ahora determinar si al interpretar una disposición constitucional parecida seguiríamos el precedente establecido por las cortes de Wisconsin.

En la moción que estamos considerando, los promoventes se refieren al segundo párrafo de la Orden General No. 118, de agosto de 1899, con relación a la reorganización y a las funciones de la Judicatura (Compilación de los Estatutos Revisados de 1911, sección 6680), en el sentido de conferirle a la Corte Suprema jurisdicción original en todos los asuntos civiles y criminales. No hay argumento alguno en apoyo de la proposición así sometida por los peticionarios. Bajo esas circunstancias, bastará decir que el párrafo en cuestión debe ser interpretado en relación con otras disposiciones conte-

nidas en la misma Orden Militar, y con arreglo a ciertos principios cardinales de hermenéutica.

No es necesario que refutemos las manifestaciones del abogado de los peticionarios al efecto de que la "Ley para transformar la Corte Suprema de Puerto Rico en corte de apelación, aprobada el 12 de marzo de 1903," (Compilación de los Estatutos Revisados de 1911, sección 1141) no limitó los poderes de la Corte Suprema tal como fué constituida por la Orden General No. 118, *supra,* y reconocida por la primera carta orgánica. Sin embargo, la ley de 1903 ofrece una indicación significativa por vía de interpretación legislativa contemporánea. La primera sección de dicha ley comienza diciendo "que el Tribunal Supremo de Puerto Rico constituirá de aquí en adelante un tribunal de apelación, y no un tribunal de casación."

En 15 C. J. 687 se define una corte de casación, así:

"El tribunal más alto de Francia; llamado así por tener la facultad de anular (*casser*) los decretos de las cortes inferiores."

Los peticionarios sostienen además que la jurisdicción de esta corte en asuntos de la clase que ahora tenemos bajo nuestra consideración ha sido fijada definitivamente por la "Ley para definir los 'injunctions,' para determinar cuándo pueden librarse, y para derogar una ley autorizando los 'injunctions,' aprobada en 1 de marzo de 1902, y todas las demás que se opongan a la presente." (Compilación de los Estatutos Revisados, secciones 1354 a 1368.)

La sección 2 de esa ley dice así (bastardillas nuestras):

"La Corte Suprema, o cualquier juez de la misma, podrá, *para hacer efectiva su jurisdicción,* librar mandamientos de *injunction,* bajo las reglas prescritas por la ley. y los jueces de las respectivas cortes de distrito podrán también librarlos *en todos los casos en que tales mandamientos sean procedentes.*"

No tenemos acceso a los casos de *Barret* v. *Watts,* 13 S. C. 441; *Hutsonpiller* v. *Stover,* 12 Gratt. (53 Va.) 579; y *Kimbal* v. *Neal,* 44 Vt. 567. En ninguno de los otros casos

citados por los promoventes hallamos discusión alguna relativa a la jurisdicción o poder de tribunales de apelación para expedir autos de *injunction.*

*Debe declararse sin lugar la moción.*